(No. 10959.—Decree affirmed.)

J. B. FERGUS, Plaintiff in Error, *vs.* ANDREW RUSSEL, State Treasurer, *et al.* Defendants in Error.

*Opinion filed February 21, 1917.*

1. CONSTITUTIONAL LAW—*meaning of section 16 of article 4 of constitution, prohibiting appropriations of money in private laws.* The provision of section 16 of article 4 of the constitution prohibiting appropriations of money in private laws is not intended as a limitation on the power of the legislature to pass a private or special law nor to prohibit the appropriation of money to a private person or individual, but it recognizes that private laws may be passed and is meant to prohibit appropriations being made in them.

2. SAME—*section 26 of article 4 of constitution is not a limitation on power of legislature to pay just claims against the State.* Section 26 of article 4 of the constitution, providing that the State shall never be made defendant in any court of law or equity, is not a limitation on the power which the legislature has to allow and appropriate money to pay claims against the State, and there is no provision in the constitution against the payment of a claim which the State is liable for and ought to pay.

3. SAME—*action of court of claims has no effect on power of legislature to pay claims against the State.* The power or lack of power in the legislature to appropriate money to pay a claim depends upon the constitution and not upon the action of the court of claims, which is a statutory body not provided for in the constitution, and the action of such body has no effect upon the power of the legislature to pay claims against the State.

4. SAME—*when question whether an appropriation is for public purpose cannot be determined.* In a bill to enjoin the expenditure of funds appropriated by the legislature for the benefit of individuals, where it is not alleged that the claims are of such a nature that the legislature could not recognize and pay them, and the only

charges in the bill are that the appropriations were made in private laws and that the legislature had no power to allow and pay claims not presented to and allowed by the court of claims, the question whether the claims are such that the appropriations may properly be considered as for a public purpose cannot be determined.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

F. S. MUNRO, and JOHN A. WATSON, (STEVENS & HERNDON, of counsel,) for plaintiff in error.

P. J. LUCEY, Attorney General, LESTER H. STRAWN, and ARTHUR R. ROY, (LOGAN HAY, of counsel,) for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

The plaintiff in error, as a tax-payer, filed a bill in the circuit court of Sangamon county against the State Treasurer and the Auditor of Public Accounts, representing that the Forty-ninth General Assembly in 1915 passed, and the Governor approved, certain appropriation bills, designated in the bill as "private relief bills," appropriating sums of money to private individuals. A list of the bills, seventeen in number, is set out, and it is averred that for the amounts appropriated by four of them the Auditor had issued warrants and that the Treasurer had paid them to the beneficiaries, and the other appropriations were still unpaid but the Auditor was about to draw his warrants for them and the Treasurer about to pay them unless they were restrained by the court. It is averred that each of said enactments is unconstitutional, inasmuch as no one of the beneficiaries therein had filed any claim and received any judgment in his favor from the court of claims for the amount appropriated or for any amount, and the attempted appropriations were in violation of sections 16, 19 and 20 of article 4 of the constitution, that the court of claims was given exclusive jurisdiction over all claims against the State of Illinois, and that

the acts of the Auditor and Treasurer were without authority of law. The bill prayed that the Auditor and Treasurer be enjoined from issuing or paying any warrants for the amounts of said appropriations and be required to return the amounts already paid. A demurrer by the defendants was sustained, the bill was dismissed for want of equity, and the complainant has sued out a writ of error.

Although the bill alleges that the appropriations are in violation of sections 19 and 20 of article 4 of the constitution, no argument has been presented as to those sections but the writ is rested upon the first clause of section 16 of article 4, which provides that "the General Assembly shall make no appropriation of money out of the treasury in any private law." It is contended by the plaintiff in error that the appropriation of money to an individual is an appropriation from the treasury in a private law. It is necessary to ascertain the meaning of the first clause of section 16 of article 4 and what it was intended to prohibit. In the view we take it is unnecessary to discuss what is a private or special law and what is a public or general law.

There was no limitation on the power of the legislature to pass private laws by the constitution of 1818. The constitution of 1848 took the power from the legislature, exercised under the former constitution, of granting divorces and placed a few other limitations upon its power but did not materially curtail it in the passage of private laws. Many private laws were passed and it was believed the legislative power in that respect was often improperly used. Mr. Allen was chairman of the committee on legislative department in the constitutional convention of 1870, and when article 4 was first reported by the committee the provision here involved was not a part of it, although it did contain a section prohibiting the legislature from passing local or special laws in certain cases and in all other cases where a general law could be made applicable. When the article was reported the second time with amendments, the

provision that "the General Assembly shall make no appro-
priation of money out of the treasury in any private law"
was section 38. In the further revision of the article the
provision became part of section 16 of article 4 in the same
language in which it was reported and adopted as section 38.
It seems certain it could not have been intended as a limi-
tation on the power of the legislature to pass a private or
special law. That was provided for in section 22, and the
language of the provision under consideration recognizes
that private laws may be passed but prohibits appropriations
being made in them.

The meaning of the provision "that the General As-
sembly shall make no appropriation of money out of the
treasury in any private law" we do not understand to be
that no appropriation can be made to a private person or
individual, but it means that no appropriation for any pur-
pose shall be made out of the treasury in any private law.
That this was the object and purpose intended by the
framers of the constitution we think is shown by the de-
bates when that provision was under consideration. The
meaning of the last four words, "in any private law," was
discussed at some length, and Mr. Allen stated the words
were used "to prevent the legislature from incorporating
appropriations of public money in private laws." It was
suggested by Mr. Haines that money voted out of the pub-
lic treasury to pay a person for property sold the State re-
lated to such individual alone and was a private law. Mr.
Allen replied the purpose of the committee was to prevent,
in the law relating to such a contract, the appropriating of
money; that "the clause was inserted at the request of the
Auditor; he sometimes finds that private bills have amend-
ments tacked on appropriating sums of money; it was to
cut off that abuse that this clause was put in." An amend-
ment was offered by Mr. Haines to substitute "except by
general law" for "in any private law." Mr. Church, speak-
ing against the amendment, said: "I think a few moments'

consideration will show that if it is to be done by a general law, only, * * * as contradistinguished from a special law, it will afford no opportunity to appropriate money for any one of the special objects of the State's care." Mr. Haines, in support of his amendment, said: "I believe that it is almost the unanimous sentiment of our people that special laws should be absolutely done away with." The amendment failed to carry. Mr. Sedgwick then moved to strike out the whole section. This motion failed to carry, and the section as originally presented and as here involved was agreed to.

.It also appears from the debates in the convention that when the delegates were considering section 26 of article 4, "The State of Illinois shall never be made defendant in any court of law or equity," it was intended and understood that no limitation was placed on the power of the legislature to pay just claims against the State. Said section 26 was reported by the committee on the legislative department as section 34. As reported it contained a provision authorizing the General Assembly to provide for commissioners or arbitrators to investigate and report on claims against the State. The section was amended by striking out the provision authorizing the appointment of commissioners or arbitrators, on the suggestion that that clause contained nothing that the General Assembly might not do without it. A reconsideration of the action of the convention in striking the clause out was moved and there was a lengthy debate on the motion, in which it was contended by those favoring reconsideration that the prohibition against making the State a defendant to any suit in a court of law or equity was a radical departure from the previous constitutions. It was recognized by those participating in the debate that there would be just claims against the State which the General Assembly would have power to adjust and pay. The opponents of the motion to reconsider based their opposition to it on the ground that the provision stricken out was

superfluous; that it was unnecessary to say the legislature had power to do an act which it had the power to do unless prohibited from exercising it. It clearly appears from the debate on this subject that those engaged in it on both sides understood there was no limitation placed by the constitution on the power of the General Assembly to allow and appropriate money to pay claims against the State.

The bill alleges that the court of claims, by the act of 1903 creating it, was given exclusive jurisdiction over all claims against the State, and that the claims for the payment of which the appropriation bills attacked were passed failed to receive the approval of said court, and the bills making the appropriation were therefore unconstitutional and·void. The court of claims is a statutory body not provided for in the constitution, and its action can have no effect upon the power of the legislature to pay claims against the State. If the legislature has no such power in any case, favorable action by the court of claims upon the claims would not give the legislature power to pay such claims by making appropriations therefor. If it has the power to pay claims it cannot be deprived of it by unfavorable action on such claims by the court of claims. The power or lack of power to appropriate money to pay claims depends upon the constitution and not upon the action of the court of claims. There is no provision in that instrument against the payment of a claim which the State is liable for and ought to pay, and as the State cannot be sued either at law or in equity, the power to make such payment must be in the legislature.

Counsel for the plaintiff in error further argue that the acts are unconstitutional because the legislature is without power to give away money. This argument is based on the assumption that the claims for which the appropriations were made were not such as the legislature was authorized, under the constitution, to pay, but were such as the State had no concern with; that the appropriations were made

not for any public purpose but were mere gratuities, in direct violation of the fundamental principle that the entire public shall not be taxed for the benefit of a private individual. In this case, however, the question whether the claims were such as might properly be considered as for a public purpose cannot be determined, because it is not claimed or alleged in the bill that the claims were of such a nature that the legislature could not recognize and pay them. The only charges in the bill are that the appropriations were made in private laws, and that the legislature had not the power to allow and pay claims not presented to and allowed by the court of claims.

The decree will be affirmed.      *Decree affirmed.*