Frank Dinwiddie, Appellee, v. Norman Siefkin and Household Finance Corporation, Appellants.

Gen. No. 9,132.

318

Opinion filed January 24, 1939.   Rehearing denied April 4, 1939.

HERSHEY & BLISS and DANIEL H. DAILEY, both of Taylorville, and GEORGE B. RHOADS, of Shelbyville, for appellants.

HARRY I. HANNAH, of Mattoon, for appellee; R. F. DOVE, of Shelbyville, and T. R. FIGENBAUM, of Mattoon, of counsel.

MR. PRESIDING JUSTICE RIESS delivered the opinion of the court.

A judgment in the sum of $7,900 was entered in the circuit court of Shelby county upon the verdict of a jury in favor of the plaintiff appellee, Frank Dinwiddie, and against defendants appellants, Norman Siefkin and Household Finance Corporation, in a suit to recover damages for personal injuries alleged to

have been sustained by the plaintiff, who was struck by defendants' automobile while engaged with other employees of the State of Illinois in repair work on State Highway Bond Issue Route No. 16, from which judgment defendants have appealed to this court.

The first two counts of plaintiff's complaint, as amended, charged the defendants with having wantonly and wilfully injured the plaintiff, while the third count charged general negligence. Defendants first filed motions to strike the complaint on the ground that all parties were operating under and bound by the provisions of the Workmen's Compensation Act, which motions were denied, and answers and reply were filed, wherein the issues were joined and a jury trial followed, resulting in a verdict in favor of plaintiff under the third count. Motions for directed verdict were interposed by the defendants at the close of plaintiff's evidence and of all the evidence and were denied. Motions for judgment notwithstanding the verdict, for a new trial and in arrest of judgment were also denied, and judgment was entered on the verdict.

It appears from the evidence that plaintiff Frank Dinwiddie and three other workmen were engaged in heating, pouring and sanding tar, in filling and repairing cracks in an 18-foot concrete slab on the above State highway extending east and west between and beyond the cities of Shelbyville and Mattoon, Illinois, at a point about 3½ miles east of Shelbyville. The collision and resultant injuries occurred shortly after 2 o'clock in the afternoon of May 6, 1936, at which time a ton and one-half State owned dump truck was being slowly driven and operated westward on the north or right-hand side of the black center line of the highway by one of the workmen, Delmer Riley, at a speed of one to one and one-half miles per hour.

A 2-wheeled tar wagon containing a tar pot partially filled with hot tar, about 3x3½x5 feet in dimensions,

with smoke stack from which smoke was issuing at the top thereof, was attached to the rear of the truck by 2 iron arms or braces made of 2⅛x3 inch channel irons. Attached to the right fender of the tar pot was a steel wire 108 feet long which extended to the rear along the highway where it was attached to and dragged a sled, about 2x2½ feet in size and made of 4x4 inch lumber, along the right-hand or northerly edge of the slab, upon which sled an upright sign about 2½ feet square faced eastward or to the rear, bearing the words "One Way Traffic," at the top of which sign was attached a red flag extending horizontally from the south side of the sign pointing toward the center of the pavement. A similar red flag was also attached to the rear of the truck.

The truck had slowly traveled and worked westward on the north side of the pavement about 2½ miles, while the three workmen on foot were engaged in the cleaning, tarring and sanding operations. The plaintiff was sweeping out the cracks that required tarring with a broom at a point about 30 feet east or back of the tar pot and about 20 feet behind him Oscar Tull was pouring hot tar out of a bucket into the cracks. Approximately 30 feet to his rear, another employee, Early, was engaged in sprinkling sand from a bucket upon the freshly poured tar. Back of Early about 20 feet, the sled, sign and flag were being slowly drawn by the attached wire along the north edge of the pavement. Riley, the truck driver, sat in the truck with one foot on the running board and was watching the work and traffic both from the front and rear of the repair equipment when the accident occurred.

A Chevrolet sedan driven by George Davis at about 45 miles per hour, came from the east, approached the highway crew from the rear, and as it drew near, slowed down to about 20 miles per hour, and in passing, pulled to the left or south side of the slab and had

come up almost even with the truck and tar pot at the time.

Defendant appellant, Norman Siefkin, 24 years of age, was also driving westward in a new Plymouth coupe, in the course of his employment as investigator for defendant, Household Finance Corporation, en route from Flora to Pana, Illinois, on business for his employer.

He was traveling at a speed of 65 to 75 miles per hour, according to witnesses Delmer Riley and Mrs. Carrie Helton, and by his own statement about 50 miles per hour. He came up directly behind Davis in the westbound lane with the intention of passing around Davis. At this moment Davis, according to Siefkin, turned over into the left-hand or eastbound traffic lane to pass the men, and Siefkin, for the first time, saw the warning sign, the highway crew and the truck. He immediately applied his four-wheel brakes and locked the wheels and skidded on in the right-hand lane, knocking the sand bucket out of Early's hands, striking Tull and Dinwiddie and crashed into the rear end of the tar pot, bent the iron supports and his car partially turned, struck the fender of the Davis car and stopped at an angle on the slab. The hitch irons of the tar pot and truck were broken and the truck knocked forward approximately 10 feet. The sand bucket was thrown down the road alongside the truck, Tull was knocked about 60 feet and died immediately, and plaintiff Dinwiddie was knocked about 30 feet over on to the right-hand dirt shoulder near the rear end of the truck. The tire skid marks upon the pavement extended back from the truck 125 feet to about 15 or 16 feet back of the warning sled.

Dinwiddie was taken by ambulance to a hospital at Shelbyville, where he was treated for his injuries, which, according to plaintiff and his physicians, consisted of a lacerated cut on his left forehead, dislocated

right shoulder and collar bone injuries, a puncture wound above his left hip, bruises and shock; that X-ray pictures were taken which disclosed a dislocation of his right shoulder, the muscles and ligaments torn loose so that the scapula had dropped down and the clavicle raised up one and one half to two inches out of normal position; that the chronium process holding the shoulder in place was injured, and a condition shown which indicated rib and back injuries. Plaintiff remained in the hospital at Shelbyville for 18 days. He was subsequently sent to a Chicago hospital where a repair operation was performed on the shoulder by removing fascia from his leg and opening up and sewing the clavicle and scapula together. He was in the Chicago hospital for 4 weeks, and his body, shoulder and arm were in a cast for 11 weeks.

The plaintiff and a treating physician testified that this and other injuries resulted in permanent disability in use of the right arm and shoulder. He testified that he had been unable to work since this injury; that he suffers pain almost continuously in his back, shoulder and neck; must lift his weight on his right leg; walks with a cane; can climb stairways only with difficulty; cannot lift with his right arm, nor use it to any considerable extent and cannot perform any kind of manual labor; that he was 58 years of age, married, living with his wife, and for some time prior to the injury had been employed by the State of Illinois in general highway maintenance and repair work on an average, as he testified, of 4 to 6 days per week at an average daily wage of $3.20.

Plaintiff's Exhibit "A," admitted without objection, disclosed that medical, surgical, hospital and hotel claims and medical supplies in the total sum of $901.96 had been paid by the State of Illinois and that the further sum of $271.55 had been so paid as compensation for temporary disability as a result of the injury.

It is contended on the part of the defendant appellants that both the State of Illinois and the defendants were operating under and bound by the provisions of section 29 of the Workmen's Compensation Act (ch. 48, par. 166, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 143.44]), and that, therefore, the plaintiff has no common law right of action against the defendants herein, but is limited to his statutory right to claim compensation payable to him by his employer under the terms of the act.

If both parties were operating under and bound by the terms of that act, then the employee cannot recover for the negligence of the third party who is also bound by the act, but is limited to his statutory right to recover compensation payable by his employer under the terms of the act. (*O'Brien v. Chicago City Ry. Co.,* 305 Ill. 244, 137 N. E. 214.) This directly raises the question of whether or not the employee has a claim or cause of action under the act as against the State of Illinois, which would bring both parties within the scope of the above provision.

It appears from the evidence that the plaintiff Dinwiddie was employed in extra hazardous repair work upon a concrete State highway by the State of Illinois and that his injury arose out of and in the course of his employment; that such injury was proximately caused and occasioned by the negligent acts of the defendant Siefkin, an employee of the Household Finance Corporation, then operating under and bound by the terms of the Workmen's Compensation Act.

It was held in the case of *City of Rock Island v. Industrial Commission,* 287 Ill. 76, 122 N. E. 82, that where an employee of the city, while engaged in sweeping and cleaning concrete streets in said city, was struck by an automobile and sustained injuries, the finding of the Industrial Commission that he was engaged in an extra hazardous occupation, out of and

in the course of which his injury arose, was in accord with the facts; that "the occupation of constructing permanent roads whereon cement mixtures are formed and placed and where rock is crushed and placed thereon may be regarded as a dangerous occupation. The maintaining and repairing of such public roads or of public streets in cities are the maintaining and repairing of a 'structure' within the meaning of division 1 of paragraph (b) of section 3 aforesaid, (section 3, Workmen's Compensation Act, ch. 48, par. 139, Ill. Rev. Stat. 1937) when the maintaining and repairing of the same are, in fact, extra-hazardous. (*McLaughlin v. Industrial Board*, 281 Ill. 100.)"

In the case of *Menestrina v. St. Louis Nat. Stock Yards*, 278 Ill. App. 342, a suit for damages under the Injuries Act was filed against the St. Louis National Stock Yards seeking recovery for the benefit of intestate's next of kin, growing out of the death of a State veterinarian, who was alleged to have been fatally injured as the result of a fall occasioned by the breaking of defendant's stock pen fence, over which the decedent had sought to climb in attempting to escape from a charging bull which he was seeking to inoculate with serum in the course of his employment. The upper plank of the fence was broken and caused him to fall and receive fatal injuries, and it was charged that the Stock Yards' company had negligently failed to keep its fences in reasonably safe repair, resulting in his death while there as an invitee in the performance of his said duties. A plea to the general issue and a special plea were filed by the defendant alleging that plaintiff's intestate was an employee of the State and that the plaintiff should have proceeded against the State under the Workmen's Compensation Act, and that he had no cause of action against the defendant, who was also operating under the act. A demurrer to this special plea was sustained, and the ruling was assigned as error.

In passing upon the error assigned, the court said: "Sec. 26, Art. 4, of the State constitution, provides, 'The State of Illinois shall never be made defendant in any court of law or equity.' Proceedings, under the Workmen's Compensation Act, before the Industrial Commission, while somewhat informal, in all their essentials partake of the nature of law suits, and are terminated by an order or judgment which fixes the rights of the parties as effectually as does a judgment at law or a decree in equity. We are of opinion that to have thus proceeded against the State, would to all intents have been to sue the commonwealth, a course which is barred by the constitution. . . . The subject, however, is fully provided for by the Court of Claims Act, pars. 462 to 475, ch. 37, Cahill's R. S. 1933. Par. 467, subpar. 4, relative to the powers of the court, provides that it shall have power to 'hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, *ex contractu* and *ex delicto,* which the State, as a sovereign commonwealth, should, in equity and good conscience discharge and pay.' Paragraph 6 of the same section confers upon the court the power 'to hear and determine the liability of the State for accidental injuries or death suffered in the course of employment by any employee of the State, such determination to be made in accordance with the rules prescribed in the Act commonly called the "Workmen's Compensation Act," the Industrial Commission being hereby relieved of any duty relative thereto.' Par. 474 declares that the jurisdiction conferred upon the court of claims is exclusive. . . . It is apparent that the legislature designed that such demands were only cognizable before, and by, the court of claims, and that the procedure therein should be, as near as might be, that employed under the Workmen's Compensation Act, which should not otherwise apply. That this is clear appears from the last clause of said par. 6: 'The Industrial Commission being here-

by relieved of any duty relative thereto.' It is manifest that the demand could not have been heard by the Industrial Commission, and the court properly sustained the demurrer to the special plea.'' The above case was thereupon tried on issues joined and adjudicated on its merits as between the claimant and the defendant, although the defendant National Stock Yards was operating under the Workmen's Compensation Act, and the suit was filed by the personal representative of an employee of the State of Illinois.

That the inclusion of the State with all other municipal corporations, bodies politic and other employers and their employees engaged in extra hazardous enterprises or businesses enumerated in section 3 of the Workmen's Compensation Act was intended by the legislature to be directory only and not ''binding'' upon the State is evidenced by the above provision expressly relieving the industrial commission ''of any duty relative thereto.'' It will be further noted that in the *City of Rock Island* case, *supra,* the claim of the employee who was injured by a passing automobile while sweeping the city streets was filed with and heard by the Industrial Commission, which is given exclusive jurisdiction of claims under the Workmen's Compensation Act, with the sole exception of claims filed against the State. The action of the court of claims cannot be reviewed by certiorari or otherwise, as may be done when a claim for compensation is instituted before the Industrial Commission.

That the State is not bound by the Compensation Act in the same reciprocal sense in which it applies to and between other employers and employees is well illustrated by the case of *Fredrickson v. State of Illinois,* reported in 6 C. C. R. 347 (1929), wherein the driver of a State truck negligently backed his truck into the automobile of the claimant, who thereupon filed his claim for damages in the State court of claims, in the

sum of $173.98 based upon the alleged negligence of the State employee. It was there said: "The claim being based upon the negligence of an employee of the State cannot be allowed. No government is liable for the negligence of its employees in the absence of a statute making it liable for such negligence. (*Gibbon v. United States,* 8 Wal. 268; *Minear v. State Board of Agriculture,* 259 Ill. 549; *Hollenbeck v. Winnebago Co.,* 95 Ill. 148.) If the injury complained of was caused by the negligence of the driver of the truck, claimant's remedy is against the driver and not against the State. (*Cooney v. Town of Hartland,* 95 Ill. 516.)"

In the case of *Minear v. State Board of Agriculture, supra,* a suit was filed by the plaintiff who had been injured in the fall of temporary seats added to a grandstand upon the State fair grounds and filed a suit in tort for the recovery of damages, predicated upon alleged negligence of the agricultural board resulting in plaintiff's injury. The Supreme Court there held that the State board was an arm or agency of the sovereign State government, and, therefore, could not be sued upon the tortious action because of the inhibition of the above section 26, art. 4, of the State Constitution. See also *In re City of Mt. Vernon,* 147 Ill. 359 (363 *et seq.*), 35 N. E. 533.

The rule announced in the case of *Fergus v. Russel,* 277 Ill. 20, 115 N. E. 166, that the sovereign State cannot be sued because of the above provisions of the Constitution has been uniformly held by the courts of review of this State. The advisory jurisdictional power of the court of claims does not confer upon individuals the right to sue and enforce recovery from the State in contravention of the above provisions of the Constitution. It seems obvious that the intention of the legislature in creating reciprocal rights of recovery between respective employers and employees, when all are operating under and bound by the act, was not in-

tended to create an enforceable legal claim or demand against the State. If an employee of a third person bound by the act was injured through the negligence of a State employee, it would further seem obvious that the employer could not recover compensation paid by him to his injured employee from the State of Illinois under the provisions of section 29 of the Workmen's Compensation Act.

We therefore hold, as in the *Menestrina* case, *supra,* that the plaintiff herein was not deprived of his common law remedy, hence the cause was properly submitted to the jury upon the issues of fact as joined herein.

It is further contended by the appellant in its brief that if the State was not so operating under and bound by the provisions of the act, the State could not become a party to the proceeding by interpleader and thus procure a lien by subrogation against the judgment for the amount which it had advanced in payment of physicians and hospital bills and temporary disability allowances to the plaintiff. The purported order of subrogation was entered by the lower court after the final judgment and appeal therefrom was perfected in this case, hence we will not undertake to pass upon the validity of such order, as the same was not appealed from by either party and is not before this court.

On the question of due care by plaintiff, there was no controversy; on that of negligence on the part of defendant Siefkin, who was conceded to have been engaged in the duties of his employment at the time of plaintiff's injury, there is little controversy. Seventeen witnesses testified on material questions of fact for the plaintiff and only defendant Siefkin testified for the defendants. The jury might well have been warranted in finding the defendant on the facts shown in the record to have been guilty of wanton and wilful

conduct under the first and second counts of the complaint. The verdict in favor of the plaintiff under the third or general negligence count was in accord with the manifest weight of the evidence, and on the facts in evidence, we are constrained to hold that any other verdict would have been contrary to the manifest weight of the evidence. A new trial, if granted, under the evidence produced herein, would not likely result in any other verdict, and it is the opinion of this court that substantial justice has been done between the parties.

Defendants appellants have assigned certain additional errors concerning the admission of evidence and the testimony of physicians, principally of a cumulative character, which we deem under the whole of the evidence, not to have been prejudicial in its effect. We do not deem the exhibition of the plaintiff's injured shoulder or the plaster cast to the jury or taking exhibits to the jury room to have been an abuse of discretionary power by the trial court. Nor do we find certain remarks by plaintiff's counsel in his closing argument, to which objection was promptly made and sustained by the court and which the jury was instructed to disregard, to have adversely affected the defendants' interests. The remarks complained of, however, were improper, and their use does not meet with the approval of this court.

Defendants assign as a further ground of error that under the whole of the evidence, the verdict was excessive; that certain alleged errors in instructions left the jury in a state of mind where they might well have given exemplary damages under the third count. The instructions set forth the rule of law permitting exemplary damages to be given in the event of the defendant being found guilty under the first or second counts charging wanton and wilful conduct. The jury evidently distinguished between the two counts charg-

ing wanton and wilful conduct and the third count which charged negligence and found the defendant guilty under the third count only. We cannot assume in that state of the record that the jury might have been misled by the instructions providing for exemplary damages in the event of finding the defendant guilty of wanton and wilful conduct.

A number of physicians and surgeons testified to the nature and extent of the plaintiff's injury, pain and suffering. There was evidence showing that the clavicle and scapula and connecting ligaments were torn apart and displaced and that a new shoulder had to be built by a surgeon in Chicago from fascia taken from one of the limbs of the plaintiff; that the use and mobility of the shoulder and arm was greatly restricted and weakened and that this condition was permanent; that the plaintiff, an uneducated man who was obliged to depend on physical labor for his livelihood, would be unable to perform ordinary manual labor thereafter.

In view of these facts, which were submitted to the jury, we do not find the amount of the verdict to have been contrary to the manifest weight of the evidence. While the record herein is not entirely free from error, we hold that substantial justice has been done between the parties and that no reversible error appears in the record.

The judgment of the circuit court of Shelby county is therefore affirmed.

*Judgment affirmed.*