(No. 4951-

BARNABAS F. SEARS and WILLIAM S. BODMAN, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 12, 1964.*

WILLIAM J. LYNCH, Attorney for Claimants.

WILLIAM G. CLARK, Attorney General; BERNARD GENIS and EDWARD A. BERMAN, Assistant Attorneys General, for Respondent.

PEZMAN, J.

The case at hand was brought by Barnabas F. Sears and William S. Bodman to recover an award from the State of Illinois for the legal services they performed, pursuant to an appointment by the Attorney General of Illinois, in representing the Auditor of Public Accounts and the Director of Financial Institutions in protracted and rather heavily complex litigation resulting from a custodial seizure by the Auditor of Public Accounts of a savings and loan association.

Mr. Sears seeks an award for services he performed as a Special Assistant Attorney General from November 1, 1957 to June 6, 1960. Mr. Bodman requests an award for his services as a Special Assistant Attorney General for the period from October 1, 1957 to April 18, 1960.

On April 25, 1957, the Auditor of Public Accounts of the State of Illinois, Elbert S. Smith, pursuant to the applicable provisions of the Illinois Savings and Loan Act, took custody of the City Savings Association, a savings and loan association, located in Chicago, Illinois. City Savings, at that time, had some twenty-six thousand (26,000) share-holders, and assets in excess of Thirty-Five Million Dollars ($35,000,000.00). Less than a week after custody of City Savings was taken by the Auditor, an action was filed by the Association (later amended to include its officers) to enjoin further custody by the Auditor. The litigation eventually involved numerous other parties in that and other related legal proceedings.

On May 2, 1957, two days after the complaint was filed by City Savings, the Attorney General wrote to Mr. Sears and Mr. Bodman, and appointed them Special Assistant Attorneys General to represent the Auditor of Public Accounts in the litigation relating to the custody of savings and loan associations seized by the Auditor. Since the appointment by the Attorney General is of basic importance to this Court in its consideration of the cause, we will set forth in complete detail at this time the two letters of appointment.

EXHIBIT A

LATHAM CASTLE
ATTORNEY GENERAL
State of Illinois
160 North LaSalle Street
Chicago 1, Illinois

May 2, 1957

Barnabas F. Sears, Esq.
Attorney at Law
One North LaSalle Street
Chicago 2, Illinois

Dear Barney:

You are hereby appointed Special Assistant Attorney General for the purpose of representing Honorable Elbert S. Smith, Auditor of Public Accounts, in litigation relating to the custody of building and loan associations

by the Auditor of Public Accounts, and in relation to the confirmation of appointment of receivers of building and loan or savings and loan associations.

Your service as Special Assistant Attorney General is to be compensated otherwise than out of the appropriation for the office of the Attorney General. You will be paid either from funds of the savings and loan association to which the litigation relates, as authorized by law, or out of the appropriation for the office of the Auditor of Public Accounts.

> Very truly yours,
> (Signed)  Latham  Castle
> Latham  Castle
> Attorney General

EXHIBIT B

LATHAM CASTLE
ATTORNEY GENERAL
State of Illinois
160 North LaSalle Street
Chicago 1, Illinois

May 2, 1957

W. S. Bodman, Esq.
Attorney at Law
120 West Adams Street
Chicago, Illinois

Dear Mr. Bodman:

You are hereby appointed Special Assistant Attorney General for the purpose of representing Honorable Elbert S. Smith, Auditor of Public Accounts, in litigation relating to the custody of building and loan associations by the Auditor of Public Accounts, and in relation to the confirmation of appointment of receivers of building and loan or savings and loan associations.

Your service as Special Assistant Attorney General is to be compensated otherwise than out of the appropriation for the office of the Attorney General. You will be paid either from funds of the savings and loan association to which the litigation arises, as authorized by law, or out of the appropriation for the office of the Auditor of Public Accounts.

> Very truly yours,
> (Signed)  Latham  Castle
> Latham  Castle
> Attorney General

The record shows that Mr. Sears and Mr. Bodman immediately embarked upon the performance of their duties as counsel for the Auditor of Public Accounts. As a result of the nature of the litigation in which they became involved while representing the Auditor, and the

ancillary proceedings, which arose from the primary action, Mr. Sears and Mr. Bodman were required to and did devote a substantial amount of their time during the following three years to the performance of their duties as Special Assistant Attorneys General. In the first 18 months during which the Mensik litigation was pending, claimants worked day and night on the litigation and related matters. Because of the emergency nature of the litigation and the great amount of time required, it appears that they had little time left to devote to the usual business of their law firms. They have testified at length before this Court concerning the nature and extent of the services they performed, and the time consumed by them in representing the Auditor and later the Director of Financial Institutions, who succeeded the Auditor as Administrator of the Savings and Loan Act.

Each claimant regularly, and in accordance with his usual standard office practice, maintained a detailed time record of the work and services performed for his client. The same procedure was followed by them in the Mensik-City Savings matters. Detailed compilations of the time records mentioned above were admitted in evidence during the hearings in the Court of Claims as exhibits Nos. 3 and 21. A copy of exhibit No. 3, indicating in some detail Claimant Sears' time and services, is attached to the claim filed with this Court as a Bill of Particulars, as is a copy of exhibit No. 21, which serves as a Bill of Particulars of the time spent by Mr. Bodman. These exhibits adequately reflect the elements of time and effort expended by these men. Claimant Barnabas F. Sears asks for $59,243.75 as the reasonable value of his services for the period from November 1, 1957 to June 8, 1960. Claimant William S. Bodman seeks the sum of $34,790.00 as the reasonable value of his services for the period from October 1, 1957 to April 18, 1960. Claimant Sears was

paid for his services, as well as for the services rendered by his associates, who worked on various phases of the litigation under both claimants' supervision, for the period from May 2, 1957 to October 31, 1957. Claimant Bodman was compensated for his services to October 1, 1957. Payment of the sum of $63,000.00 for legal services rendered by claimants to those dates were made from the funds of the Association at the direction of the Auditor, and were later approved by the Supreme Court in its final decision in the Mensik case as reported at 18 Ill. 2d 591.

Claimants base their case upon the theory that, pursuant to a contract of retainer, they performed substantial legal services for which they have not been compensated, and for which the State would, in law, be liable, if it were not a sovereign entity, and those services were performed. As a natural result, claimants also contend that the amounts set forth are the usual, customary and reasonable fees for the services performed, and that Claimant Sears is entitled to be compensated for the services performed by his associates under the direction and supervision of both Mr. Sears and Mr. Bodman.

Respondent in its original brief and argument never denies the claimants' contract for retainer as a basis for recovery, but spends a great deal of time upon the idea that the Court has the right to determine for itself how much time a certain litigation took, or should take; how much time is reasonable to put into certain litigation; and, in asserting that claimants' associates were not requested to perform any legal services by the State of Illinois, and that, therefore, there could be no recovery for those services rendered by the associates of Mr. Sears, since the appointment was a personal appointment of both Mr. Sears and Mr. Bodman to represent the Auditor of Public Accounts.

This Court will not expend much time or effort in considering the last two points of contention between claimant and respondent. The integrity and character of both Mr. Sears and Mr. Bodman are unimpeachable. This Court does not question that the services in fact alluded to by claimants were performed, nor does this Court doubt that the services rendered to the Auditor of Public Accounts and the Director of Financial Institutions were valuable. There were many protracted Master's hearings and court hearings, all of which terminated in a decree whereby inter alia the Circuit Court undertook the supervision of the City Savings Association. There was an appeal to the Supreme Court upon an extensive Master's Report, which was dismissed by a divided Court for want of a final judgment. There was active representation of the State Auditor and later the Director of Financial Institutions by claimants during the period the Court was supervising the Association. When a final decree was entered, there was another appeal to the Supreme Court. In addition, there were four separate mandamus petitions prepared by claimants. The first raised more or less technical questions with respect to the parties, and the motion for leave to file was denied. The second was prepared after the Court had entered a decree undertaking the supervision of the savings and loan association, and presented, among other things, important constitutional questions as to the separation of powers. Motion for leave to file this petition was allowed, and respondent was ordered to answer. Thereafter the Supreme Court, on its own motion, vacated its order allowing leave to file, and entered an order denying such leave. The third petition was prepared after the trial court had refused to enter a final order, and, although a motion for leave to file the petition was

denied, the order denying it granted leave to file a fourth petition. The fourth petition was prepared, and was filed pursuant to leave granted. The petition was argued before the Supreme Court, but that Court never had to decide the case, because a final order was entered.

This Court will give little weight or credence to the contention of respondent that Claimant Sears is not entitled to recover for the services performed by his associates. The Court of Claims, in the case at hand, is primarily interested in two isolated questions of prior importance. Let us consider those questions first.

1. Did the Attorney General have the authority to retain Claimants Sears and Bodman as Special Assistant Attorneys General? The Attorney General is the only State Official empowered to conduct the law business of the State. This precedent was clearly established in the case of *Fergus* vs. *Russell*, 270 Ill. 304, and acts to confirm the constitutional authority granted by Sec. 1 of Art. V of the Constitution, as well as the common law authority carried by the title, Attorney General. Because of this common law and constitutional authority as the chief legal officer of the State, the Attorney General has the inherent power to appoint Special Assistant Attorneys General. This is again reaffirmed in *Saxby* vs. *Sonnemann*, 318 Ill. 600, and was recently reaffirmed in the case of *The People* vs. *Toll Highway Commission* (May, 1954), 3 Ill. 2d 218. In the Toll Highway Commission case, the Supreme Court held as follows:

"The tenth, and final, objection concerns itself with the right of the Commission to employ counsel under subsections 6 (d) and (e) of the Act. It is contended that these subsections violate Sec. 1 of Art. V of the State Constitution. Those sections authorize the Commission to appoint assistant attorneys by and with the consent of the Attorney General, and to retain special counsel subject to the approval of the Attorney General. It is expressly provided that such assistant attorneys and special counsel shall be under and subject to the control, direction and supervision of the Attorney General, and shall serve only at his pleasure. This Court has

held that the establishment of the office of Attorney General, under Sec. 1 of Art. V of our Constitution, endowed that office with all of its common law powers and duties. We have further held that neither the General Assembly nor the judiciary can deprive the Attorney General of any common law power inherent in that office. An inherent power of the Attorney General is the exclusive prerogative of conducting the law business of the State, both in and out of the courts, except where the State Constitution or a constitutional statute may provide otherwise."

2. Recognizing that the Attorney General has the power and the authority to appoint Special Assistant Attorneys General, the basic problem remains as to whether or not, when an Attorney General appoints a special assistant, he is obliged to pay him from his appropriation for special assistants, or can obligate the State of Illinois generally to make such payments when there is no appropriation providing for such payment or any other method with which to provide such funds. What happens to our normal inquiry as to whether or not such funds had in fact been appropriated, and were available for the purpose desired at the time that the contract of retainer was entered into? In the case at hand the Attorney General, realizing that both Mr. Sears and Mr. Bodman would and should be paid for their services to the Auditor of Public Accounts and State of Illinois, indicated in the letters of appointment that their compensation would be payable from one of two sources. Those letters state as follows:

"Your service as Special Assistant Attorney General is to be compensated otherwise than out of the appropriation for the office of the Attorney General. You will be paid either from funds of the savings and loan association to which the litigation relates, as authorized by law, or out of the appropriation for the office of the Auditor of Public Accounts."

If the State of Illinois were not a sovereign entity, the letter of appointment of the Attorney General would constitute the contract of retainer. The letters expressly provide for the method of payment to claimants for services rendered. The record in the case at hand does not disclose that there was ever, during any of the time that

legal services were rendered by Claimants Sears and Bodman, an apropriation for the office of the Auditor of Public Accounts for the payment of legal services, nor has there ever been such an appropriation for the office of the Director of Financial Institutions. Thus we see removed the possible payment for these services out of the appropriations for the offices of the Auditor of Public Accounts and the Director of Financial Institutions. In the Mensik-City Savings case in the Circuit Court of Cook County, the trial judge ruled in November of 1957 that no further payment of attorneys' fees could be made from the funds of the Savings and Loan Association. It is true that claimants were paid for their services from funds of the Savings and Loan Association for periods prior to those claimed herein. Our Supreme Court in *Mensik, Et Al,* vs. *Smith,* 18 Ill. 2d 572, confirmed the payment of previous fees to Sears and Bodman, but ignored the question of payment of any further fees in its final decision. Thus we see that it was not possible for claimants to be paid from funds of the City Savings Association after November, 1957. In the case before us, Claimants Sears and Bodman now seek recovery from the State of Illinois, through the Court of Claims, for services rendered without an appropriation for the payment of the same.

In *Fergus* vs. *Brady,* 277 Ill. 272, the Supreme Court stated:

"By Sec. 19 the General Assembly is prohibited from authorizing the payment of any claim, or part thereof, created against the State under any agreement or contract made without express authority of law, and all such unauthorized agreements or contracts are null and void, with the exception that the General Assembly may make appropriations for expenditures incurred in repelling invasion or suppressing insurrection."

The Court further states:

"In Sec. 19 claims under any agreement or contract made by express authority of law are excepted, and, if there is some particular and specific thing which an officer, board or agency of the State is required to do,

the performance of the duty is expressly authorized by law. That authority is express, which confers power to do a particular, identical thing set forth and declared exactly, plainly and directly, with well defined limits, and the only exception under which a contract exceeding the amount appropriated for the purpose may be valid is where it is so expressly authorized by law. An express authority is one given in direct terms, definitely and explicitly, and not left to inference or to implication, as distinguished from authority, which is general, implied or not directly stated or given."

The rule in *Fergus* vs. *Brady* remains undisturbed by later cases.

In the "Coal Products" cases, (*Schutte and Koerting Company, Et Al*, vs. *State of Illinois*, 22 C.C.R. 591), this Court held as follows:

"We, therefore, hold that the Singh Company and Dr. Singh were the agents of the Illinois Coal Products Commission, and had the authority to bind the Commission in purchasing the materials for the pilot plant if, and only if, the Commission had the power and authority to make the purchases at that time.

"With respect to this question, it is fundamental that all governmental agencies, departments and commissions are strictly circumscribed in their powers and authorities by the Constitution and statutes of the State of Illinois."

This Court goes on to cite from *Fergus* vs. *Brady*, 277 Ill. 272, much of the same language given above.

In the "Coal Products" cases, this Court held:

"In the first place, if such had been the legislature's intention, it would have simply and plainly stated such intention (the right of the State to 'purchase the products' of the unauthorized agreements at an agreed price. (Explanation Supplied.)

"In the second place, the appropriation prohibits the Auditor from making any disbursements unless the Court of Claims *in the ordinary conduct of its powers of settling claims against the State of Illinois* has rendered an award. This Court's authority and power is subject to the Constitution and laws of the State of Illinois. We could not, if we wished, disregard any statutory or constitutional provision. We have no power to either restrict or extend the power of the legislature to pay claims against the State.

"The Supreme Court in *Fergus* vs. *Russell*, 277 Ill. 20 at page 25, stated: 'The Court of Claims is a statutory body not provided for in the Constitution, and its action can have no effect upon the power of the legislature to pay claims against the State. If the legislature has no such power in any case, favorable action by the Court of Claims would not give the legislature power to pay such claim by making appropriations therefor. If it has the power to pay claims, it cannot be deprived of it by

an unfavorable action on such claims by the Court of Claims. The power or lack of power to appropriate money to pay claims depends upon the Constitution and not upon the action of the Court of Claims.

"It necessarily follows then that, in order to properly perform our function, we should not render a decision recommending the payment of a claim, which is clearly prohibited by the Constitution."

In the cause at hand the Attorney General did not in fact provide a method for payment of compensation to claimants under the contract of retainer except as specified in the letters of retainer, and the Attorney General did explicitly and expressly deny Claimants Sears and Bodman the right to be paid from the Attorney General's appropriation. Claimants could only look to the City Savings and Loan Association or the appropriation for the office of the Auditor of Public Accounts for payment. There was no appropriation for the Auditor's office for this purpose, and there had never been such an appropriation, as we have related above.

The fact that the Circuit Court of Cook County stopped any further payments of fees to claimants from City Savings and Loan funds cannot be likened to the factual situation, which exists when there is a lapsed appropriation. There was no lapse of an appropriation of a department or division of the State of Illinois. Where a lapse of an appropriation occurs, the funds are returned to the "General Revenue Fund" of the State of Illinois. There is no possibility of a lapsed appropriation in the case at hand.

With no appropriation in the office of the Auditor of Public Accounts available, there is no claim for legal fees based upon a contract with the State of Illinois. The claims for services rendered are hereby denied.