·BAKER *v.* THE NATIONAL SURETY CORPORATION.

4-7985                                    197 S. W. 2d 752

Opinion delivered November 25, 1946.

Rehearing denied December 23, 1946.

*R. W. Tucker,* for appellant.

*W. M. Thompson* and *Barber, Henry & Thurman,* for appellee.

GRIFFIN SMITH, Chief Justice. Edgar Baker, Sheriff for Independence County, sued Forrest Jeffery and National Surety Corporation for $6,671.23 covering a group of alleged irregularities, and in addition sought judgment for $922. Jeffery was Collector during 1941, 1942, 1943 and 1944. He was then elected County Judge. The claim of $922 is based upon Baker's assertion that the amount was wrongfully collected.[1] National was Jeffery's surety from 1941 to 1944, inclusive. By the same action it was sought to restrain Robert Stroud, Collector when the suit was filed, from collecting commissions in excess of those allowed by Act 48 of 1917, and to require repayment of excesses. Ernest Stroud, Treasurer, was also made a defendant for the same purpose. Demurrers filed by the two Strouds were sustained. Appellant insists that this action decided that part of the complaint whereunder it was sought to compel Jeffery as Collector during the 1941-'44 period to account, "except as set out hereafter in the brief." It appears, however, that Jeffery answered separately.

The complaint first alleges that Jeffery should be required to repay the County $922 representing salary warrants drawn against general revenue. Section two of the initiated Act provides that the County and Probate Judge [2] shall receive a salary of $2,400 per year for all

---

[1] Jeffery was Collector during 1939 and 1940, but his accounts for those years are not questioned. While appellant's complaint, as expressed in the prayer for relief, asks that Jeffery and National be held jointly and severally "in the sum of $6,671.23, . . . and also judgment for $922 salary drawn unlawfully", in a Statement of the Case appellant says he ". . . . sought to recover $5,554.89 from Forrest Jeffery . . . and the National Surety Corporation, his bondsman". The difference of $1,116.34 has reference to alleged overcharge of commissions by Jeffery as Collector during the 1941-'44 period.

[2] By Amendment No. 24 to the Constitution, approved in the general election of 1938, County Judges were relieved of probate duties and such responsibilities imposed upon Chancellors.

of his services, and nothing more, "payable out of the County Salary Fund." Section twelve is: "All county officers whose salaries are fixed by this Act, except those receiving no fees, shall charge and collect, for the benefit of the County, the same fees, costs, commissions, perquisites, and compensation" as the law now or hereafter may require.

The County Judge and Assessor do not receive fees, commissions, etc. Half of the Assessor's salary is paid by the State, but in the salary Act with which we are dealing no provision is made for payment of the remaining fifty per cent.

As to the County Judge appellant thinks no compensation can be paid until by factual disclosure at the end of each year it is shown a sufficient surplus has accumulated above the legal demands of other participants. But the question is, Who is a participant and what is the Salary Fund? Section twelve of the Act denominates as a class all County officers "except those receiving fees," and makes them trustees in respect of commissions and other collections; but they are, by express words of the Act, trustees for the County during the brief interim allowed for withholding funds. Section thirteen requires the Treasurer to keep a *separate* account of moneys, and prohibits a transfer of credits from one officer's account to another's ". . . unless the sums credited thereto shall in the aggregate exceed the annual salary of said officer and his deputies, [together] with such expenses as are herein fixed and authorized for the current fiscal year."

Appellant contends that the Salary Fund is composed of the combined excess earnings when all of the offices are considered, and that the County Judge can be paid only from such. In other words, he is relegated to the remainder after others have been satisfied.

Initiated Act No. 3 appears to have intended (a) that a general Salary Fund be established, into which all earnings of fee- or commission-collecting officers should go, each being credited with deposits, and charged; or

(b) that separate Salary Funds or accounts be set up on the Treasurer's books and that each eligible participant be charged or credited as the circumstance warrants. If the intention was to create one fund, then the language of Sec. 12 is in conflict with Sec. 2, for under one alternative there would be no County Salary Fund, as such, but only an aggregate of entries representing earnings of officers who are paid fees or commissions, or who have other incomes of a public nature which they must account for. Intention of the Act must be ascertained from the purpose to be served, as expressed by the terms employed.

Our view is that money accumulating in the Sheriff's Salary Fund may be used in an amount not exceeding ninety percent in the payment of properly approved obligations incident to that office. The County Judge and Assessor would finally receive their salaries from excess earnings, notwithstanding they do not collect commissions or fees. But this does not mean, as appellant contends, that in respect of the ten percent earned by the Sheriff above the ninety percent, the County Judge and Assessor must wait until the end of the year to ascertain if others have been paid; nor is there anything in the Act justifying a collecting officer in retaining funds beyond the time limit so definitely fixed. We think the ten percent margin denied the Sheriff, although ultimately a supplement to general revenue, is, *pro tem,* a Salary Fund, and that at the close of a particular month, or monthly period for settlement, it is temporarily available to pay warrants drawn in favor of the County Judge or Assessor.

A perplexing situation, from a practical standpoint, arises when it is considered that expenses (we have reference to the Sheriff because supplies, etc., are furnished others by the County) vary from year to year, and from month to month, and it is impossible to tell at the close of a designated month what the annual requirements will be. An example of the status that may be created through accumulations to the credit of different funds,

is shown in the footnote, reflecting income and possible outgo for an annual period.[3]

A County Court order of December 31, 1945, was introduced, showing the following balances: Circuit Clerk, $1,424.74; County Clerk, $703.31; Assessor, $5.08; Collector, $2,596.05; Treasurer, $1,625.30—total, $6,354.-49. On the same day, however, the Court found that the Initiated Act, by express terms, provided that the County Judge's compensation of $2,400 per year was payable from the Salary Fund. It was then held that inasmuch as fees and commissions were denied the County Judge, it had been necessary to make payments from general revenue. An order transferring $1,000 from the Collector's account, $1,150 from the Treasurer's account, and $250 from the Assessor's account was entered. The three items aggregate $2,400, and presumptively were subtracted from balances before the transfers of $6,354.49 were made. The various amounts would reflect a surplus of $8,756.49.

On final hearing February 5, 1946, the causes were dismissed for want of equity. At that time Baker contended the salary judgment against Jeffery should be $2,112.80 instead of $922, the increase being supplementary accumulations, as disclosed by the proof and representing payments made during 1945. (After deducting Federal withholding taxes, warrants were for $187.20.)

*First.*—We think that part of the decree refusing to enjoin future payments from the County's general revenue fund was erroneous, and in that respect it is reversed. But this does not mean that because a preventive remedy was available to a complaining party, (who as to money going into this account was a taxpayer) the County Judge

[3] For 1944: Income from Sheriff's office, $7,947.03; salary, including authorized deputy hire, $3,600; expenses, $3,552.33; excess, $794.70. County Clerk: Income, $4,095.27; salaries, $3,600; excess, $495.27. Circuit Clerk: Income, $3,726.65; salaries, $3,300; excess, $426.65. Collector: Income, $6,567.66; salaries, $3,000; excess, $3,567.66. Treasurer: Income, $5,394.02; salaries, $1,800; excess, $3,594.02. Assessor: Income, (half paid by State) $1,200; salaries, $2,400; deficit, $1,200. County Judge: No income; salary, $2,400; deficit, $2,400. [Salaries mentioned are based upon the maximum payable in any year. Expenses, of course, are variable. Initiated Act No. 3 was amended in 1942, effective January 1, 1943. By the

should be required to repay amounts already received. It will be presumed that at the time monthly payments were made there were apparent surpluses in the various officers' funds, and transfers were subsequently made. There the injury ended because there had been repayment.

*Second.*—Appellant insists that the defending Collector improperly credited himself with commissions during the 1941-'44 period. He contends that Special Act No. 48 of the Fifty-First General Assembly (1917) was not repealed by any subsequent legislation, and that under Sec. 1 of that measure the Collector is entitled to charge one and a fourth percent, ". . . and out of said sum shall pay his deputies and assistants," and himself. By Act of March 31, 1883 (Pope's Digest, Sec. 13832) certain commissions were allowed collectors under a graduated scale. Act 120, approved March 6, 1941, amends the Digest section.[4]

Act 78, approved February 20, 1941, fixes Treasurers' fees generally on a percentage basis. Section twelve of Independence County's Initiated Act directs that all officers whose salaries are fixed by the people's legislation, except public servants who do not receive fees, ". . . shall charge and collect, for the use and benefit of the County, the same fees, costs, commissions, perquisites and compensation as are now or hereafter required or permitted by law to be charged by such officer for such services."

Appellant seeks to make the point that because the Collector and Treasurer were operating under special

amendment deputy hire was increased in the offices of County Clerk, Circuit Clerk, and Assessor. Provision was also made for a deputy Collector. Based upon information disclosed by the audit, the excess accumulation from offices receiving incomes from fees, commissions, etc., is indicated to be $8,800 annually. After payment of salaries and expenses chargeable against the Salary Fund, including Assessor and County Judge, excess fees appear to amount to approximately $5,200].

[4] Act 120 of 1941 provides: "Said Collector shall be allowed a commission for collecting the revenue in the year 1941 and thereafter as follows: For the first $10,000 collected, 5% in kind; for all sums over $10,000 and under $20,000 collected, 4% in kind; for all sums over $20,000 collected, 3% in kind".

laws when the salary measure of 1936 was enacted, sub-sequent general legislation did not work a repeal of the Act of 1917. What appellant misconstrues is the intention of Initiated Act No. 3. Fees and commissions were not established, nor was there an effort in that respect. The purpose was to require those charged with collection duties to adopt the fixed rates *now or hereafter permitted.* Since the Initiated Act contemplated that laws affecting fees and commissions might be changed, provision was made for just such a contingency. It follows that the Collector and Treasurer were performing an express duty when they charged under the revised schedules. It was known when the Initiated Act was adopted that special and local legislation by the General Assembly had been prohibited by constitutional amendment; hence the term ''now or hereafter permitted by law'' could only have reference to a general Act, or to a locally initiated measure.

*Third.*—This brings us to consideration of appellant's claim that Jeffery, as Collector, withheld from his settlements money due different funds in 1941, 1942, 1943, and 1944. Bookkeeping and office equipment necessary to modernize accounting was needed, but funds were not immediately available with which to make payment. An order in the form of a judgment was made incident to the purchases in question. It is, in part, as follows: ''To the Collector of Independence County. It appearing that the County was in dire need of a new tax-collecting system, . . . [therefore] after talking with the Auditor, Deputy State Comptroller, the county officials of Independence County, and the newly-elected governing bodies for the schools, it was decided to secure the system recommended by the Auditorial Department, . . . [costing] $4,387.44. . . . The Collector is hereby ordered to pay to the [various parties who sold the equipment, specified sums]. The above is to be deducted pro rata from said collection, as each account benefits alike from the new system.'' The arrangement provided for partial payments, and these were made by the Collector annually as the installments fell due, with individual County Court

orders covering each. The Collector paid from public funds, and in his settlement took credit.

The method employed was highly irregular; and certainly the Collector could have been stopped by injunction before making the payments. The question now is, May Baker, under authority of Art. 16, Sec. 13, of the Constitution, maintain this suit for restitution?

In actions somewhat similar to the case at bar we have given the constitutional provision an exceedingly liberal construction. *Green* v. *Jones,* 164 Ark. 118, 261 S. W. 43; *McCarroll, Commissioner of Revenues,* v. *Gregory-Robinson-Speas, Inc.,* 198 Ark. 235, 129 S. W. 2d 254, 122 A. L. R. 977; *Beene* v. *Hutto,* 192 Ark. 848, 96 S. W. 2d 485; *Baker* v. *Allen,* 204 Ark. 818, 164 S. W. 2d 1004; *Eddy* v. *Schuman,* 206 Ark. 849, 177 S. W. 2d 918; *Samples* v. *Grady,* 207 Ark. 724, 182 S. W. 2d 875. In the Baker-Allen decision it was held that the statute of limitation applied to mileage fees collected more than three years before the suit was instituted.

While in his complaint Baker alleged that he was a citizen, resident, and taxpayer *of* Independence County, he testified that he was a taxpayer *in* Independence County. Assuming that what appellant intended to say was that he was a citizen and taxpayer *of* Independence County, residing in Batesville, still the constitutional provision is being subjected to a long, tedious, and circuitous journey if we go the added distance to find by implication the missing allegation that the plaintiff below (who is obviously more interested in punishment than repayment) has shown such a financial interest in the school districts (or in any account over which the County Judge would not have jurisdiction) as to justify judgment against an officer who admittedly is not an intentional default, who co-operated with the State Auditorial Department to procure a workable equipment for the purpose of collecting taxes and accounting, and in obeying a County Court order in circumstances devoid of a purpose to defraud. Limitation was pleaded for the payments made in 1941 and 1942.

Except for the injunctive relief heretofore mentioned, we think there is prima facie a showing through court orders that the school districts, (perhaps in an irregular or informal way) authorized that purchases be made, the idea being to increase income; and while the equipment is not in actual possession of any identified district, it is constructively at the disposal of all of them. They are not complaining, and presumptively have profited. Since appellant has not identified himself as a payer of school taxes in any of the districts, we think that in view of all the circumstances it would be inequitable to permit Baker's complaint to speak for those who may be satisfied, and to impose upon Judge Jeffery the burden of personally paying, at this late date, for public property—the purchase of which appellant might have circumvented by appropriate procedure at a time when obligation, if imposed upon Jeffery, would have been only the initial payment, now barred by limitation. Certainly Baker knew of the transactions when they occurred, or shortly thereafter.

That part of the decree refusing to enjoin the County Judge from collecting his salary from the general revenue and the Treasurer from paying the warrants is reversed. In other respects it is affirmed.