CITY OF LITTLE ROCK *v.* CAVIN.

5-3370                                      381 S. W. 2d 741

Opinion delivered September 14, 1964.

*Joe Kemp* and *Jack Young,* for appellant.

*John Jernigan,* for appellee.

ED F. McFADDIN, Associate Justice. The City of Little Rock filed this suit for a declaratory judgment. The defendants were Wiley D. Cavin, Sr. and the other two members of the Pulaski County Board of Election Commissioners. The real question was whether a 1958 election in Pulaski County—involving the matter of voting machines—could be held effective under a 1962 constitutional amendment and a 1963 legislative enactment passed in pursuance to said amendment. The City claimed the affirmative, the defendants urged the negative; and the Chancery Court ruled against the City. The appeal was not filed in this Court until May 28, 1964; but the appellants, claiming public interest, insisted on a speedy decision, so we heard and decided the case on June 1, 1964, and announced affirmance of the Chancery decree, with the present Opinion to be filed later.

Events occurred in the following order:

(a) By Act No. 484 of 1949 the Arkansas Legislature provided that the use of voting machines could be submitted to a vote of the citizens of any county.

(b) At the General Election in 1958 the voting machine issue was submitted to the voters of Pulaski County, and a majority voted for such machines.

(c) Under Act No. 484 of 1949 the Shoup voting machine was submitted to and approved by the State Board of Election Commissioners, but the Pulaski County Board of Election Commissioners failed and refused to take any action to provide such voting machines in Pulaski County.

(d) On October 21, 1959, the City of Little Rock filed suit in the Pulaski Circuit Court against the Pulaski County Board of Election Commissioners, praying for mandamus to require the use of voting machines. The Circuit Court refused the prayed relief; and the City appealed to this Court.

(e) In the case of *City of Little Rock* v. *Henry* (No. 5-2370), 233 Ark. 432, 345 S. W. 2d 12, decided on April 10, 1961, this Court held that the said Shoup machine did not comply with the requirements of Article III, Section 3 of the Arkansas Constitution.[1] That case, referred to as "the first case," became final when the petition for rehearing was denied on May 1, 1961.

(f) Rather than try to find a voting machine that would fulfill the constitutional requirements pointed out in our said Opinion, the proponents of voting machines initiated a proposed constitutional amendment, which was submitted to and adopted by the voters of the State at the 1962 General Election as Amendment No. 50, and which, in its entirety, reads:

"§ 1. REPEAL OF ARTICLE III, SECTION 3. —Article III, Section 3, of the Constitution of the State of Arkansas is hereby repealed and the following section is substituted therefor.

---

[1] The concluding paragraph of that opinion reads: "The trial court declared Act 484 to be unconstitutional, but we think the declaration should be only that the use of the Shoup machine in its present form is contrary to the constitution. The machine's defect is that it does not make a record of individual votes. Act 484 is silent upon that point, however, and consequently the act cannot be said to violate the constitution. We perceive no constitutional objection to a machine conforming to the specifications of Act 484 and having the additional characteristic that is lacking in the Shoup machine."

"§ 2. ELECTIONS BY BALLOT OR VOTING MACHINES AUTHORIZED.—All elections by the people shall be by ballot or by voting machines which insure the secrecy of individual votes.

"§ 3. NUMBERING AND RECORDING OF BALLOTS — DISCLOSURE OF VOTE PROHIBITED — EXCEPTION.—In elections by ballot every ballot shall be numbered in the order in which it is received, the number shall be recorded by the election officers on the list of voters opposite the name of the elector who presents the ballot, and the election officers shall be sworn or affirmed not to disclose how any elector voted unless required to do so as witness in a judicial proceeding or a proceeding to contest an election.

"§ 4. VOTING MACHINES. — Voting machines may be used to such extent and under such rules as may be prescribed by the General Assembly.

"§ 5. EFFECTIVE DATE. — This amendment shall take effect and be in force from January 15, 1963."

(g) On February 14, 1963, there was approved Act No. 53 of 1963, captioned:

"AN ACT Implementing Constitutional Amendment No. 50, Authorizing Use of Mechanical Voting Machines in Voting Precincts for Recording and Computing the Vote at Party Primary and General Elections and Other Elections Authorized by the State Board of Election Commissioners or County Boards of Election Commissioners, Authorizing Cities, Counties or the State to Furnish Such Mechanical Voting Machines to the Various Precincts and Political Subdivisions Situated in the State of Arkansas, Providing for the Purchase of Such Machines by the Various Cities, Counties or State, Authorizing Methods of Payment, Authorizing the State Board of Election Commissioners to set Standards of Machines to be Used in any Election in the State of Arkansas and the Purchase Thereof; and for Other Purposes."[2]

2 The emergency clause reads:
"EMERGENCY CLAUSE: It is hereby determined that Amendment Fifty (50) to the Constitution of the State of Arkansas, as adopted

(h) On October 30, 1963, the City of Little Rock filed the present suit in the Pulaski Chancery Court against the Pulaski County Board of Election Commissioners, praying—as aforesaid—for a declaratory judgment to the effect that the vote in the 1958 election held in Pulaski County on the issue of voting machines was valid and still binding on the County Board of Election Commissioners and that the effects of such election and the subsequent constitutional amendment and Legislative enactment were to require steps to be taken to obtain voting machines for use in Pulaski County, or particularly for use in the City of Little Rock.

(i) The Pulaski County Board of Election Commissioners resisted the suit, and on May 15, 1963, the Pulaski Chancery Court denied any relief to the City of Little Rock and this appeal resulted, being filed in this Court on May 28, 1964.

With the order of events thus understood, we come to the real question which, as previously indicated, is whether the City of Little Rock may use the 1958 election results under Act 484 of 1949 as compliance with Act 53 of 1963. The City insists that the 1949 Act was valid; that the 1958 election was held under that Act; that the Constitutional Amendment No. 50 and the 1963 Legislative enactment were all matters in furtherance of the 1949 Act; and that therefore there is no necessity for another election. The Pulaski County Board of Election Commissioners insists that the decision of this Court in 1961 concluded the first case; that Amendment No. 50 was adopted to "overrule" that case; that Act 53 of 1963, being a complete reenactment of the 1949 Act, thereby impliedly repealed the 1949 Act; and that the 1963 Act is prospective and a new election must be held in accordance with the provisions of the 1963 Act.

by the people of the State, should be implemented by the foregoing Act at the earliest possible date in order that Cities, Counties, and the State may, if they so desire, utilize the provisions of this Act, and it is hereby declared by the General Assembly of the State of Arkansas that it is advantageous and desirable that the foregoing enabling Act be adopted at the earliest practicable date. An emergency is, therefore, declared to exist, and this Act being necessary for the preservation of the public peace, health and safety, which take effect and be enforced from the date of its approval."

For any one of several reasons we agree with the result reached by the Chancery Court; but the stating of one reason will suffice. In *City of Little Rock* v. *Henry, supra* (the first case), we held that the Shoup voting machine did not comply with the requirements of Article III, Section 3 of our Constitution; and it was to overcome the effect of that decision that the proponents of voting machines obtained the adoption of Amendment No. 50, which eliminated the language in Article III, Section 3 of the Constitution, which had ruled out the Shoup voting machine. This Amendment No. 50 was neither curative nor retrospective: it specifically provided in Section 5 thereof: "This amendment shall take effect and be in full force from January 15, 1963." The amendment also provided in Section 4: "Voting machines may be used to such extent and under such rules as may be prescribed by the General Assembly." Thus, the amendment did not become effective until January 15, 1963, and thereafter the Legislature by Act No. 53 of 1963 prescribed for the use of voting machines. If the Amendment No. 50 had been intended to be retrospective or curative it certainly would not have contained (a) a future effective date, or (b) provisions that the Legislature "may" prescribe for voting machines. In short, the Amendment No. 50 was prospective and did not validate elections held before its effective date.

It is a well recognized rule of constitutional law that the adoption of a constitutional amendment which merely permits the enactment of a statute of a certain type does not, of itself, validate such a statute which was void when enacted before the adoption of the constitutional amendment. *Whetstone* v. *Slonaker* (Neb.), 193 N. W. 749; *Plebst* v. *Barnwell* (La.), 148 So. 2d 583; *Northern Wasco* v. *Wasco County* (Ore.), 305 P. 2d 766. See annotation in 171 A.L.R. 1070 entitled: "Removal or suspension of constitutional limitation as affecting statute previously enacted"; and see also 16 C.J.S. p. 140, "Constitutional Law" § 45. If a bad statute is not validated retrospectively by a subsequent constitutional amendment, then likewise, a bad voting machine is not validated retrospectively by a subsequent constitutional amendment

which would allow the Legislature to provide for voting machines of a particular kind. Stated another way, if the subsequent adoption of a constitutional amendment, prospective in effect, does not validate preexisting statutes, then, likewise, the subsequent adoption of Amendment No. 50 did not validate the election concerning the Shoup voting machine, which machine was held in our first case to be lacking in constitutional compliance.

The City of Little Rock cannot claim the Amendment No. 50 as effective to validate a 1958 election for a voting machine that was not in compliance with the constitutional requirements at the time of the 1958 election. Those desiring voting machines must now proceed under Amendment No. 50 and Act No. 53 of 1963, entirely forgetting the 1958 election.

The Chancery decree is affirmed.