EDDY *v.* SCHUMAN.

4-7247                                   177 S. W. 2d 918

Opinion delivered February 21, 1944.

*Chas. C. Eddy* and *G. B. Colvin*, for appellant.

*E. A. Williams* and *U. A. Gentry*, for appellee.

HOLT, J. October 23, 1943, Dr. J. D. Eddy, appellant, on behalf of himself and all other residents and tax-payers similarly situated and interested, brought this action against appellee, Schuman, and the five commissioners of Conway County Bridge District, seeking to cancel a certain deed from the district to Schuman.

He alleged, in his complaint, that he was a resident and taxpayer of Conway county and had been since the creation of said bridge district pursuant to Act 71 of the Acts of 1917, and has paid all assessments made by the district upon his own land since the district was created.

He further alleged that on December 13, 1940, the bridge district, through foreclosure proceedings, obtained title to fractional southwest quarter of section 7, township 5 north, range 16 west, 147.20 acres, more or less, in Conway county; that under said foreclosure proceedings and deed said bridge district became the sole owner of said land with the right to sell and convey the same; that it was the duty of the bridge commissioners to secure a reasonable, and the best obtainable price for said land, which was worth, when sold to appellee, Schuman, $1,000; that disregarding their duty to appellant and all other taxpayers similarly situated, L. T. Oates as secretary and E. E. Mitchel as president of the bridge district, without the knowledge or authority of the commissioners of the district, on December 2, 1941, executed a deed conveying the land in question to appellee, Schuman, for a consideration of $9.75; that Schuman knew at the time he obtained said deed that the land was reasonably worth $1,000 and that the consideration of $9.75, which he paid, was totally inadequate, unconscionable and a fraud upon

appellant and all other taxpayers similarly situated. He further alleged "that all debts of said district had been paid at the time of the execution of said deed, and there was no immediate necessity to sell said land"; that it was the duty of the commissioners to obtain a reasonable and fair price for the land and that they either intentionally or carelessly failed to perform their duty in the sale of the land to appellee for a grossly inadequate consideration; that the action of the commissioners in making the sale and of appellee, Schuman, in purchasing the land for the nominal amount of $9.75, constituted a fraud upon appellant and all other taxpayers similarly situated and was against "public policy and void, and such as to constitute a shock to the conscience of this court."

Appellant prayed that the deed to Schuman be canceled and title restored to the bridge district and for other equitable relief. To this complaint appellee demurred, alleging: "1. The plaintiff in this cause is not a proper party plaintiff. 2. The defendants in this cause are not proper parties defendants and are wrongfully joined. 3. Plaintiff's complaint, together with his amended complaints, does not state a cause of action against any of the defendants in this case. 4. That this court has no jurisdiction to try the above cause of action in that he does not have jurisdiction of either the parties or the subject-matter."

July 9, 1943, the trial court sustained the demurrer and upon appellant's refusal to plead further, dismissed his complaint for want of equity. This appeal followed.

It will be observed from the allegations in the complaint that at the time Schuman purchased the land in question and secured his deed from the bridge district, all bonds and other indebtedness of the bridge district had been paid in full. This being true, appellee earnestly contends that by virtue of Act 330 of March 15, 1939, which provides: "After all of the valid bonds and interest of any bridge improvement district have been paid in full, then all amounts collected from the sale of lands and from delinquent taxes shall be paid into the State Bridge Bond Retirement Fund,"—the landowners within

the district have no interest in the surplus funds or assets of the district and says appellee, "The state is the only one who has any interest in the lands belonging to this bridge district. The state, therefore, is the only one who has the capacity to bring a suit to cancel a wrongful sale by the district."

Since the debts of the district have all been paid, and assuming, without deciding that all surplus funds and assets of the district became the property of the state and must be paid into the "State Bridge Bond Retirement Fund," under the above act, we cannot agree that appellant, as a resident and taxpayer, has no such interest in these funds as would entitle him to bring the present suit.

As a general proposition, it must be remembered that the state is made up of its individual citizens and can only operate and function by virtue of revenue which it takes from the pockets of these citizens in the form of taxes. Obviously, the funds here involved have now become public funds, whether state or district, and all taxpayers of this state are equitable owners of these funds and the equitable remedy is accorded the taxpayer to prevent misapplication of these funds since the taxpayers may be required to replenish funds exhausted by misapplication.

We think the rule announced in *Farrell* v. *Oliver,* 146 Ark. 599, 226 S. W. 529, applies here. In that case, it appears that the General Assembly of 1917 made provision for two institutions, the Boys' Industrial School and the Girls' Industrial School of Arkansas. Certain taxpayers in Pulaski county instituted an action in the Pulaski chancery court to restrain the State Auditor from drawing warrants on the appropriation made in support of these institutions, and to restrain the State Treasurer from paying said warrants. Speaking for this court, Judge McCulloch there said: "The right of appellants to maintain this suit is challenged, but we are of the opinion that as citizens and taxpayers of one of the counties of the state they can maintain an action to restrain the Auditor and Treasurer from paying out funds without legal appropriation thereof by the Legislature.

"The Constitution (art. 16, § 13) provides that 'any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.'

"This court has construed that provision to mean that a misapplication by a public official of funds arising from taxation constitutes an exaction from the taxpayers and empowers any citizen to maintain a suit to prevent such misapplication of funds. *Lee County* v. *Robertson*, 66 Ark. 82, 48 S. W. 901; *Grooms* v. *Bartlett*, 123 Ark. 255, 185 S. W. 282. The provision quoted above refers, in express terms, to citizens of any county, city or town,' but the exactions from which a remedy is afforded are not those limited to counties or towns, and this provision of the Constitution is broad enough to afford a remedy against state-wide exactions which are illegal. Such is the effect of our decision in *Griffin* v. *Rhoton*, 85 Ark. 89, 107 S. W. 380.

"There is eminent authority for holding, even in the absence of an express provision of the Constitution, such as that referred to above, that a remedy is afforded in equity to taxpayers to prevent misapplication of public funds on the theory that the taxpayers are the equitable owners of public funds and that their liability to replenish the funds exhausted by the misapplication entitle them to relief against such misapplication. *Fergus* v. *Russell*, 277 Ill. 20, 115 N. E. 166." See, also, *McCarroll, Commissioner of Revenues,* v. *Gregory-Robinson-Speas, Inc.,* 198 Ark. 235, 129 S. W. 2d 254, 122 A. L. R. 977.

We think the principles announced in the above case apply with equal force here and that appellant could properly maintain this suit as a resident and taxpayer.

We think the complaint stated a cause of action. The complaint alleged that the secretary and president of the bridge district executed and delivered a deed to appellee, Schuman, for the land in question without authority of the commissioners' of the district, at a grossly inadequate price, such as to shock the conscience of the court; that appellee knew this and that the actions of the

secretary and president of the district amounted to a fraud on the taxpayers.

While it is true that in every instance where a bridge district sells land which it owns for an amount equal only to the indebtedness against the land for assessments, it will not be considered a breach of trust, as was said by this court in *Moon* v. *Georgia State Savings Association*, 200 Ark. 1012, 142 S. W. 2d 234: "But the fact remains that . . . good business principles require that the district should receive a price reasonably commensurate with value. 'Value,' of course, would be affected by condition of the title; but where ownership by the district is such as to merit approval by a prudent examiner, there is no warrant for disposing of such property at a fantastically disproportionate figure," and in *Watson* v. *Barnett*, 191 Ark. 990, 88 S. W. 2d 811, in announcing the rule as to the duty of the commissioners, this court said: "The commissioners, of course, are required to act in good faith and sell the lands for the best prices obtainable."

It must be observed that the bridge district here sold at private sale. Obviously, it is the solemn duty of the commissioners to dispose of all land, which it holds in trust for the taxpayers' benefit, at the best price obtainable, considering market values at the time. Assuming, as we must, on demurrer, that the allegations in the complaint which are well pleaded, are true, we think as has been indicated, that a cause of action has been stated and that the court erred in sustaining the demurrer. Accordingly, the decree is reversed, and the cause remanded, with directions to overrule the demurrer.