WALSH *v.* CAMPBELL, COUNTY JUDGE

5-3996                                                405 S. W. 2d 264

Opinion delivered June 6, 1966
[Rehearing denied July 25, 1966.]

*Neill Bohlinger,* for appellant.

*Glenn F. Walther, John T. Jernigan, Gayle K. Ford,* for appellee.

GEORGE ROSE SMITH, Justice. This taxpayer's suit, brought by the appellant, questions the validity of a lease-purchase contract by which the Pulaski County Board of Election Commissioners has undertaken to acquire 300 voting machines for use at elections within the county. The chancellor rejected all the complaining taxpayer's arguments against the validity of the contract. The chancellor nevertheless refused to issue a writ of mandamus to compel the county to appropriate money to pay the first installment due under the contract, for the reason—and only for the reason—that the proponents of the contract (the Board of Election Commissioners and the seller of the machines) have not shown that the proposed expenditure will not result in the county's exceeding its current revenues, in violation of Amendment 10 to the Arkansas Constitution.

For many years the advocates of voting machines have persevered in their efforts to obtain them for use in Pulaski county. The machines were first approved by the county at an election held in 1958, under Act 484 of 1949. Ark. Stat. Ann., Title 3, Ch. 17 (Repl. 1956). The county's ensuing attempt to purchase voting machines failed, because the machines were not capable of making a record of individual votes, as the constitution required. *City of Little Rock* v. *Henry,* 233 Ark. 432, 345 S. W. 2d 12 (1961).

Apparently it was more practical to change the constitution than to change the machines. Amendment 50, eliminating the constitutional difficulty, was initiated and adopted in 1962. The statues were revised to implement the amendment. Act 53 of 1963; Ark. Stat. Ann., Title 3, Ch. 17 (Supp. 1965). A new election in Pulaski county was held to be necessary. *City of Little Rock* v. *Cavin,* 238 Ark. 333, 381 S. W. 2d 741 (1964). After the

electorate again approved the machines the present contract was negotiated.

We need not recite the detailed provisions of this long agreement. Its length is largely due to the incorporation of the minute safeguards required by § 2 of Act 53. Ark. Stat. Ann. § 3-1702. In broad outline, the contract is a lease-purchase agreement extending over a period of ten years. The county may, but is not required to, renew the lease from year to year. At the end of the term the machines become the property of the county. The county has the option of buying the machines at any time during the term, with previously paid rentals to be credited upon the purchase price.

Section 3-1703 authorizes the county board of election commissioners to ''purchase'' voting machines. This authorization contemplates the negotiation of a binding contract, for otherwise the explicit authority to purchase would be meaningless.

There is no express requirement in the statute that the county court approve the purchase or that it be preceded by a quorum court appropriation. The appellant's primary contention, argued in four points for reversal, is that the legislative attempt to empower the county board of election commissioners to bind the county invades the exclusive jurisdiction of the county court under Article 7, § 28, of the constitution: ''The county court shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties.''

This particular argument has been rejected so often that the meaning of the constitutional provision is not open to doubt. The county court's authority to disburse funds for local purposes does not prevent the legislature

from requiring the county to pay expenses imposed by state law. We reviewed several cases in *Jeffery* v. *Trevathan*, 215 Ark. 311, 220 S. W. 2d 412 (1949), where, in upholding a statute against this same attack, we pointed out that "the net effect of this contention would be that a State law, requiring counties to publish claims at the expense of the counties, could be of no validity in any county which did not wish to comply with the State law." The publication of claims against the county touches local county concerns more closely than does the purchase of voting machines for use in State, county, and municipal elections.

Our cases were again reviewed in *Campbell* v. *Ark. State Hospital*, 228 Ark. 205, 306 S. W. 2d 313 (1957), where we sustained a statute requiring counties to pay for the maintenance of accused persons committed to the state hospital for mental examination. Among many other cases *Adams* v. *Whittaker*, 210 Ark. 298, 195 S. W. 2d 634 (1946), is almost directly in point. There it was held that the General Assembly may compel counties to bear the expense of elections. There is nothing unreasonable, especially in the light of Amendment 50, in the legislature's conclusion that the purchase of voting machines is a permissible election expense.

The appellant also insists that the Pulaski county contract is improvident, because the machines' capacity of 360 voting spaces might conceivably be insufficient for the listing of all candidates in a particular election. The same argument could be made if the machines were designed to handle 1,000 names instead of only 360. In a matter of this kind some leeway must be allowed for the exercise of sound judgment on the part of the county board of election commissioners. Furthermore, the statute permits the use of ballots when the vote is expected to be too heavy for the capacity of the machines. Section 3-1732. That section of the law provides an adequate solution for the difficulty now suggested.

The decree is affirmed, without prejudice to any fu-

ture proceeding in which there may arise a question about the sufficiency of the county's available revenues to meet the first payment under the contract.

McFADDIN, J., dissents.

ED. F. McFADDIN, Justice, dissenting. After the decision of this Court in *Little Rock* v. *Cavin*, 238 Ark. 333, 381 S. W. 2d 741, the matter of voting machines was again submitted to the electors of Pulaski County and received a favorable vote; and the machine of the Automatic Voting Machine Corporation was approved by the State Election Board, as provided by Act No. 53 of 1963. Then the Pulaski County Board of Election Commissioners signed the lease-purchase contract here involved, with the AVM Corporation; but the County Judge of Pulaski County, for himself and for the County Court, refused to sign or approve the contract. Thereupon, the appellant brought this action to enjoin the Pulaski County Board of Election Commissioners from proceeding under the contract. The Chancery Court held the contract to be legal and valid; and this appeal challenges that holding.[1]

Assuming, without deciding, that under our cases the Legislature has the power to require a county to install and use voting machines, nevertheless I insist:

(a) that the Act in question does not so provide; and

(b) that the Act still leaves it to the County Court to pass on and approve any and all payments.

For either of the foregoing reasons, the Chancery decree should be reversed.

---

[1]As stated in the Majority Opinion, the Chancellor refused to issue a mandamus to compel the County to pay the first installment under the contract for the reason that the voting machine advocates had not shown that the proposed expenditure would not result in the County exceeding its current revenues, in violation of Amendment No. 10 to the Constitution. That issue is not here discussed.

I. *The Legislative Enactment Here Involved.* The Act No. 53 of 1963 is the Act[2] which the Majority holds to be sufficient to authorize and empower the Pulaski County Board of Election Commissioners to make the contract here involved, without the consent or approval of the County Judge or the County Court of Pulaski County. The only provision I can find in the Act No. 53 regarding the lease-purchase contract for the voting machines is in Section 3 of said Act (Ark. Stat. Ann. § 3-1704 [Supp. 1965]). The germane language is:

"If the majority of the votes cast favor the proposal, the County Board of Election Commissioners shall install any voting machines approved by the State Board of Election Commissioners in all voting precincts in the County, . . . The State Board of Election Commissioners or the County Board of Election Commissioners shall have the authority to purchase or lease-purchase voting machines and *payment may be provided for in such manner as is deemed best for the interests of the State, County, or City in which an affirmative vote is cast under the provisions of this section.*" (Emphasis my own.)

It will be observed that the Act says that " . . . payment may be provided for in such manner as is deemed best for the interests of the State, County, or City . . . " Who is to make the payment? The Act is silent on that point. If the Legislature had intended for the County to make such payment, then the Legislature should have so stated, and should also have stated the source of the money for such payment. There is nothing in the Act which says who will make the payment. It might just as well be urged that the payment should come out of the *State Treasury* as out of the *County Treasury*. If the County Court is to be required to pay for the lease-purchase of the voting machines, where do such payments come in the list of priority of payments, as provided by Ark. Stat. Ann. § 17-409 (Repl. 1956.)?

[2]This Act was amended by Act No. 140 of 1965 in particulars not here germane.

The evidence shows that the Quorum Court of Pulaski County refused to make an appropriation for this voting machine contract.

I submit that the Act is a mere *authorization* Act, and not an *appropriation* Act, and that the Legislature did not empower the County Board of Election Commissioners to make contracts requiring a County to use County money to pay on a contract that the County Judge and the County Court have refused to approve,

The payments to be made under this contract certainly involve substantial sums. Merely for the lease of the machines the County will have to make these payments:

| 300 Machines | Lease Payments |
|---|---|
| 12/1/66 | $ 14,600.00 |
| 2/1/67 | 58,400.00 |
| 2/1/68 | 58,400.00 |
| 2/1/69 | 58,400.00 |
| 2/1/70 | 58,400.00 |
| 2/1/71 | 58,400.00 |
| 2/1/72 | 58,400.00 |
| 2/1/73 | 58,400.00 |
| 2/1/74 | 58,400.00 |
| 2/1/75 | 58,400.00 |
| 2/1/76 | 58,400.00 |
| | $598,600.00 |

If the County should elect, on any date before February 1, 1976 to purchase the machines, the payment price would be:

| | Option Price |
|---|---|
| 2/1/67 | $ 492,450.00 |
| 2/1/68 | 443,250.00 |
| 2/1/69 | 394,050.00 |
| 2/1/70 | 344,700.00 |
| 2/1/71 | 295,650.00 |
| 2/1/72 | 246,150.00 |

| | |
|---|---|
| 2/1/73 | 196,950.00 |
| 2/1/74 | 147,750.00 |
| 2/1/75 | 98,550.00 |
| 2/1/76 | 58,410.00 |

In addition to the schedule of payments, the contract requires the County to pay the insurance premium on the voting machines, and also to provide storage facilities for the voting machines when not in use. Judge Arch Campbell, the County Judge of Pulaski County, testified that the County had no place to store the machines and would either have to build a building or rent a building to have space to store the machines. Are all of these expenses to be paid before or after other County expenses? I cannot believe that by Act No. 53 the Legislature intended to empower the Pulaski County Board of Election Commissioners to enter into contracts involving any such sums and provisions, in the face of the refusal of the County Judge and the County Court to approve such contract.

So my first point is that the legislative enactment relied on by the voting machine advocates does not support the decree of the Chancery Court in this instance.

II. *The Act Leaves It To The County Court To Act On The Contract.* As previously stated, Section 3 of the Act No. 53 contains the only language I can find concerning payments for the voting machines; and this language, as previously quoted, says: " . . . and payment may be provided for in such manner as is deemed best for the interests of the State, County, or City . . . " How is payment "provided for" as regards County matters? Art. 7, Sec. 28 of the Arkansas Constitution says: "The County Courts shall have exclusive original jurisdiction in all matters relating to . . . the disbursement of money for County purposes, and in every other case that may be necessary to the . . . local concerns of the respective counties."

I maintain that the Act No. 53 intended that the

contract signed by the County Board of Election Commissioners should be submitted to the County Court for approval. If the County Court approved the contract, then the County Court would be required to provide funds for payment. If the County Court refused to approve the contract, then the voting machine advocates could appeal to the Circuit Court from the County Court, as in all other such cases. I cannot believe that by Act No. 53 the Legislature intended to deliberately circumvent the County Court's jurisdiction in regard to payment. Art. 7, Sec. 28 of the Constitution is still governing.

I insist that the decree of the Chancery Court should be reversed and this suit dismissed without prejudice to the rights of the advocates of voting machines to submit the contract to the County Court of Pulaski County for approval or rejection, and then proceed as in other cases at law.

For the reasons herein stated, I respectfully dissent.