B. Frank MACKEY et al v. Steve McDONALD Jr.

73-128                                         504 S.W. 2d 726

Opinion delivered February 4, 1974

*Lee Munson,* Pros. Atty., and *Henry Ginger,* Dep. Pros. Atty., for appellants.

*Eubanks, Files & Hurley,* for appellee.

JOHN A. FOGLEMAN, Justice. This action was instituted by appellee Steve McDonald, Jr., (a justice of the peace for Big Rock Township in Pulaski County) as a citizen, taxpayer and property owner of Pulaski County, on behalf of himself and all others similarly situated. The suit was a proceeding against B. Frank Mackey, individually and as County Judge of Pulaski County, and William L. Tedford, individually and as County Treasurer of Pulaski County. Appellee sought to have certain appropriations made by the county's levying court, commonly called the quorum court, declared void and to have Mackey, individually and as county judge, and Tedford, individually and as county treasurer, enjoined from authorizing, issuing, paying or disbursing any county warrants or otherwise expending any public funds under the authority thereof.

The appropriations questioned by appellee were made at meetings of the levying court held on January 12, 1973, and March 5, 1973. At the January meeting, the court made an appropriation to "County Court" for a "Contingent Fund" in the amount of $63,410.61. On March 5, 1973, the court made an appropriation of $222,265 from Federal Revenue Sharing Funds designated only as "Contingent Fund." The chancery court held that both appropriations were unlawful and unauthorized, and granted an injunction against Mackey, in his capacity as county judge or individually, from initiating, directing or authorizing any expenditure from either "Contingent Fund" and against the county treasurer from paying out any monies from these funds.

Judge B. Frank Mackey was called as a witness by

appellee. His testimony reveals he has a rather good grasp of the functions of the judge of the county court with reference to county liabilities and appropriations. He said the contingent fund was for emergency purposes to cover legitimate county expenses for which there is no appropriation. He classified these as: (1) financial obligations, placed on the county by legislative enactment, for which no appropriation has been made by the quorum court or the appropriation made is inadequate; (2) obligations of the county for proper county purposes, the payment of which results in allowances in excess of appropriations made by the quorum court. As examples, Judge Mackey mentioned a legislative increase in the allowance for operating the office of the prosecuting attorney amounting to $100,000 more than the appropriation theretofore made by the quorum court, and increased obligation on the county for the payment to court reporters for transcripts to be used for appeal purposes by indigent persons convicted in the criminal courts, for which no appropriation had been made, and obligations arising after appropriations made have been exhausted. Judge Mackey made it quite clear that no contingent fund appropriation was made to the county judge, that all payments from the contingent fund were made through the regular process of county court action on claims filed and that no payments were made in any other manner. Judge Mackey stated that he felt legally bound to allow expenses incurred pursuant to legislative enactments, both when no appropriation had been made for the purpose by the quorum court and when the quorum court's appropriation was not sufficient to meet all obligations so established. Judge Mackey testified the claims were processed through the county comptroller who audited the claims before their submission to him for approval. As we understand Judge Mackey's testimony, the comptroller indicates to the county court those claims which must be paid from the contingent fund. Mackey said the comptroller worked under his direction. There is nothing in the record to indicate that Mackey has ever acted individually or in any capacity except as judge of the county court in any of these matters. There is no contention that there has been any fraudulent action or lack of good faith on the part of either of the county officials who are defendants in the action. The appropriation was not made to or for the benefit of the county judge but clearly was placed as an item under the general heading "County Court."

The situation is a little different as to the federal revenue sharing funds. Those funds were appropriated by adoption of allocations proposed by the budget committee of the quorum court. These allocations fall into three general categories, none of which mentioned the county court and one of which was simply "contingent fund." Judge Mackey was aware that Pulaski County is required to assure the Secretary of the Treasury that these funds will be used by the county only in accordance with laws and procedures governing the county's own revenues and that misapplied funds must be repaid along with a 10% penalty. He stated that, at the time of the trial, these funds had been placed in a separate trust account and that none of the money had been spent.

Appellants filed a general demurrer to appellee's pleading, which was styled "Petition for Injunction," and specifically alleged that the chancery court was without jurisdiction under Art. 16, Sec. 13, of the Constitution of Arkansas over federal revenue sharing funds.

After hearing the matter, the chancellor expressed grave concern about the jurisdiction of the chancery court to act in the matter, as well he might. In view of the disposition we make of the case, however, we need not concern ourselves too much with the serious doubt about the jurisdiction of the chancery court over this action, which basically would appear to fall within the jurisdiction of the circuit court under Art. 7, Sec. 14. The county treasurer, however, is a party to the action. It is the duty of the county treasurer to pay and disburse monies payable into the county treasury on warrants drawn by order of the county court. Ark. Stat. Ann. § 12-1310 (Repl. 1968). If he neglects or refuses to pay any warrant drawn on him by order of the county court, when he has in his hands money available for the payment thereof, the law requires him to forfeit to the holder fourfold the amount of the warrant. Ark. Stat. Ann. § 12-1311 (Repl. 1968). Furthermore, the refusal constitutes a misdemeanor in office, and subjects the treasurer to removal. Ark. Stat. Ann. § 12-1312 (Repl. 1968). Clearly, the treasurer is a ministerial officer of the county, who is not vested with discretion in such matters.

It is true that appellee had the right to appeal from the appropriations made by the quorum court. *Lee Coun-*

*ty* v. *Robertson,* 66 Ark. 82, 48 S.W. 901. It is not clear, however, that his remedy at law was plain, adequate and complete. Under similar circumstances, this court has held that the chancery court properly exercised jurisdiction in an action against the county clerk to restrain the clerk from issuing warrants based on allegedly unauthorized orders of the county court. *Worthen* v. *Roots,* 34 Ark. 356. We consider this case to be controlling authority as to the chancery court's jurisdiction, at least insofar as the county treasurer is concerned. See also, *Farrell* v. *Oliver,* 146 Ark. 599, 226 S.W. 529. Under the authority of the cited cases, it seems that all the issues here raised may be adequately treated within the jurisdiction of the chancery court.

Appellants' first point for reversal is based upon their contention that the court had no jurisdiction insofar as the federal revenue sharing funds are concerned. They base their argument upon the assertion that Art. 16, Sec. 13, of our Constitution applies only to county tax funds but not to federal funds and that jurisdiction of misuse of federal funds is governed by the Federal Revenue Sharing Act which does not place jurisdiction in any state or local court. We do not agree with appellants.

At the outset, we should say that the application of Art. 16, Sec. 13, has not been strictly limited to exactions of county, town or city tax funds. See, e.g., *Eddy* v. *Schuman,* 206 Ark. 849, 177 S.W. 2d 918; *City of Bentonville* v. *Browne,* 108 Ark. 306, 158 S.W. 161; *McCain* v. *Hammock,* 204 Ark. 163, 161 S.W. 2d 192; *Nelson* v. *Berry Petroleum Co.,* 242 Ark. 273, 413 S.W. 2d 46; *Parker* v. *Laws,* 249 Ark. 632, 460 S.W. 2d 337; *Price* v. *Edmonds,* 231 Ark. 332, 330 S.W. 2d 82; *Cunningham* v. *Stockton,* 235 Ark. 345, 359 S.W. 2d 808; *Needham* v. *Garner,* 233 Ark. 1006, 350 S.W. 2d 194. It seems that, under this section of the constitution, equitable remedies are accorded the taxpayer to prevent misapplication of funds when the taxpayer may be required to replenish those funds if exhausted through the misapplication. *Eddy* v. *Schuman,* supra. It also seems clear that this constitutional provision is applicable in every case where taxpayers will bear the burden of replenishing funds exhausted by misapplication. *McLellan* v. *Pledger,* 209 Ark. 159, 189 S.W. 2d 789; *Samples* v. *Grady,* 207 Ark. 724, 182 S.W. 2d 875; *Farrell* v. *Oliver,* 146 Ark. 599, 226 S.W. 529. The cited cases make it quite

clear that a citizen and taxpayer may maintain a suit to prevent a misapplication of funds or to protect against unlawful official acts which could logically result in illegal exaction as well as to require reparation for that which has been done. See also, *Grooms* v. *Bartlett,* 123 Ark. 255, 185 S.W. 282. We do not consider the case of *Gipson* v. *Ingram,* 215 Ark. 812, 223 S.W. 2d 595, relied upon by appellants to be applicable here. The opinion in that case clearly points out that it was shown that the cash funds involved, admittedly public funds, were not derived from taxes but from the operation of the state agencies and institutions involved. For the purposes of the opinion in that case, these cash funds were treated as those received by the state agencies and institutions from sources other than taxes, as the term "taxes" is ordinarily used. It is also significant that in *Gipson,* none of the funds ever reached the public treasury. Quite a different situation prevails here.

Under the State and Local Fiscal Assistance Act of 1972 funds received by units of local government may be used only for specified priority expenditures enumerated in the act. See 31 U.S.C.A. § 1222. They are:

(1) ordinary and necessary maintenance and operating expenses for—

(A) public safety (including law enforcement, fire protection, and building code enforcement),

(B) environmental protection (including sewage disposal, sanitation, and pollution abatement),

(C) public transportation (including transit systems and streets and roads),

(D) health,

(E) recreation,

(F) libraries,

(G) social services for the poor or aged, and

(H) financial administration; and

(2) ordinary and necessary capital expenditures authorized by law.

In order to qualify for funds under the act, a unit of local government must show that it will establish a trust fund in which it will deposit all payments it receives and use the fund only for the prescribed priority expenditures and pay over to the Secretary of the Treasury an amount equal to 110% of any amount expended out of such fund in violation of the limitations on expenditures, if such amount is not promptly repaid to the trust fund. 31 U.S.C.A. § 1243. The local government unit is also required, under the same section, to provide for the expenditure of the funds received only in accordance with laws and procedures applicable to the expenditures of its own revenues. Thus, it is quite clear that the county general revenues would be the source of any reimbursements for unauthorized expenditures. Clearly, the taxpayer who would bear a part of the burden of reimbursement has a right under Art. 16, Sec. 13, to prevent an improper application of these funds. If the funds are to be disbursed in accordance with laws and procedures applicable to the expenditures of county revenues, clearly the courts of the state have jurisdiction to prevent expenditures which are not in accordance with state laws and procedures, even if the federal courts or other federal agencies should also have jurisidction. Nothing in the federal act pretends to limit jurisdiction of such preventive action to either federal courts or federal administrative agencies.

Appellants also contend that the chancery court erred in applying illegal exaction principles to this case, basing their argument largely on the fact that no fraud or bad faith is involved. We agree with the chancellor's finding that no fraud or bad faith had been shown. The illegal exaction principle, however, is not confined to such cases, even though there have been several occasions where these elements were the bases of findings that there had been illegal exactions. A good faith misapplication of funds in a manner or for a purpose not authorized by law constitutes an exaction from the taxpayers which is illegal even though not fraudulent. In *Lee County* v. *Robertson,* 66 Ark. 82, 48 S.W. 901, one of the earliest cases arising under this section, there was no issue of fraud or bad faith, but, at the suit of a taxpayer, the court held that an unauthorized appropriation by the quorum court was

tantamount to an allowance and enforcement of an illegal exaction against every taxpayer in the county. It has also been held that an appropriation of funds not made in the manner required by the constitution is a proper basis for taxpayer relief against an illegal exaction. *Farrell* v. *Oliver*, 146 Ark. 599, 226 S.W. 529. The making of a contract not authorized by law which would result in the taking of money from the public treasury may also be the basis for taxpayer action under this section. *Green* v. *Jones*, 164 Ark. 118, 261 S.W. 43. See also, *Price* v. *Edmonds*, 231 Ark. 332, 330 S.W. 2d 82. The anticipated payment of salaries by a city pursuant to an ordinance which was contrary to the constitution and statutes of the state was held to be appropriate basis for taxpayer relief from an illegal exaction. *Laman* v. *Moore*, 193 Ark. 446, 100 S.W. 2d 971. We have upheld a decree for recovery of salary paid to a de facto officer in a taxpayer's action under this provision of our constitution, because our law does not permit payment of salaries to such officers. *Sitton* v. *Burnett*, 216 Ark. 574, 226 S.W. 2d 544. In short, an illegal exaction, in the sense of Art. 16, Sec. 13, of our Constitution, is an exaction that either is not authorized by law or is contrary to law.

We do agree, however, with appellants in their contention that "the contingent fund" appropriation to the county court was not illegal. In this respect we disagree with the chancellor. We do not believe that the authorities relied upon by the chancellor in reaching his conclusions in this respect are applicable to the facts in this case. In *Pressley* v. *Deal*, 192 Ark. 217, 90 S.W. 2d 757, we simply held that an appropriation for expenses of the county judge was not authorized under Subdivision 6, Paragraph 7, of Crawford & Moses Digest 1982 [now Ark. Stat. Ann. § 17-409 (Repl. 1968)], because such expenses were not allowed by the laws of this state in view of the fact that a county-initiated salary act did not provide for the payment of any expenses of the county judge. It was further noted that no law of this state gave authority to the quorum court to appropriate money to pay expenses of the county judge for work done outside his official duties. The circuit court, from which that appeal was taken, had made a specific finding that this appropriation was for such a purpose. Even there we recognized that the quorum court had the power to make an appropriation to defray county government expenses allowed by the laws of the

state in addition to those specifically mentioned under the first six items of the subdivision in question.

In *Martin* v. *Bratton,* 223 Ark. 159, 264 S.W. 2d 635, there was an attempted appropriation of $20,000 ". . . from the county general fund to allow the county judge to use it as he sees fit and deems necessary." Clearly, this appropriation was not authorized under our statutes, and we characterized it as an attempt to entirely bypass the functions of the county court, because the appropriation was to be used by the county judge, rather than by the county court. But that is not the case here. Even though the county judge, when asked who would make the decision as to disbursements from this contingent fund, responded that he would, he immediately stated that guidelines were set out under the law, and in later testimony made it quite clear that payments out of this contingent fund were made on claims presented to the county court and that he, as county judge, did not make fully independent decisions without the processing of claims through the county court. It seems quite clear to us that the appropriation is not one to be expended by the county judge but by the county court, and that the defects in the appropriations involved in *Pressley* and *Martin* are absent here.

We agree with appellants and the chancellor that the county is required to pay obligations imposed upon it by law which have not been the subject of an appropriation. A review of our law in that respect would be helpful to an understanding of the disposition of this case. It is true that Art. 16, Sec. 12, of the Arkansas Constitution prohibits the payment of money out of the treasury until the same shall have been appropriated by law and then only in accordance with the appropriation. This section has been held applicable to the counties. *Nevada County* v. *News Printing Company,* 139 Ark. 502, 206 S.W. 899. See also, *Sadler* v. *Craven,* 93 Ark. 11, 123 S.W. 365.

The specified order for making appropriations by the quorum court is set out in § 17-409 as follows:

1. To defray the lawful expenses of the several courts of record of the county or district and the lawful ex-

penses of criminal proceedings in magistrate's courts, stating the expenses of each of said courts separately.

2. To defray the expenses of keeping persons accused or convicted of crime in the county jail.

3. To defray the expenses of making the assessments and tax books and collecting taxes on real and personal property.

4. To defray the lawful expense of public records of the county or district.

5. To defray the expenses of keeping paupers of the county or district.

6. To defray the expense of building and repairing public roads and bridges and repairing and taking care of public property.

7. To defray such other expenses of county government as are allowed by the laws of this State.

These purposes were first classified in the case of *Worthen* v. *Roots,* 34 Ark. 356, where we said that the first four are of an indispensable nature, essential to the support of the government, since they are for services that must be performed, else the business of the counties must stop. The last three were said not to be imposed by necessity, but to be matters of contract. The matter was gone into rather extensively in *Polk County* v. *Mena Star Co.,* 175 Ark. 76, 298 S.W. 1002. There we said that quorum or levying courts should follow the provisions of this statute strictly in making appropriations, and first make ample provision for those necessary expenses imposed upon the counties by law, after which they were at liberty to make appropriations of the whole or part of the remainder of the revenue for the second class of items, that is, those that relate to matters of contract regarding the internal affairs of the county or internal improvement thereof over which the county court has discretionary power. It was said that the first class of obligations was imposed on the counties by law and that the county court is substantially

without any discretion with respect thereto. In that case, we said:

> The holding of elections, printing ballots, pollbooks, tally sheets, and other election supplies, the feeding of prisoners confined in the county jail, the holding of courts of record and fees of justices of the peace, the salaries and fees of county officers, including the prosecuting attorneys, the making of assessments and tax books, and collecting taxes are all necessary county expenses imposed by law, over which the county court has no control or discretion except possibly the amount to be allowed for the service rendered, as all compensation is either fixed by law, or is provided for.

As indicated in the *Polk County* case, the different manner of treatment of the two classes of appropriations was first demonstrated by this court in *Worthen* v. *Roots,* supra. This court there pointed out that by the third section of an act of March 18, 1879, (the same act setting out the order for making appropriations, which now constitutes a part of Ark. Stat. Ann. § 17-409) the legislature prohibited the county court or any agent of any county from making any *contract* on behalf of the county unless an appropriation had previously been made and wholly or in part unexpended. It should be noted that this is really the effect of Ark. Stat. Ann. § 17-416. This section seems, without question, to apply to Pulaski County. The court then observed that the legislature had designedly omitted any restrictions upon allowances, as distinguished from contracts. In this respect, the court said:

> The nature and reason of this distinction, and, indeed, the full scope of the operation of the constitution itself, will become apparent from a consideration of the various purposes for which the tax is to be levied. Reverting to them, it will be seen that the first four are of an indispensable nature, essential to the support of the government. They are for services that *must* be performed, or the business of the counties must stop. The last three are not supposed to be imposed by necessity, but are matters of contract. It is well that appropriations be made for all pur-

poses, but of great consequence that in the matter of *contracts* the expenses of the counties should be limited to the amounts appropriated. This is impossible in cases of positive service required by law, and expenses incident to them; and in accordance with this view the legislature did not reimpose upon the county any disability as to allowances. Indeed, it is plain that any other view of the case would place the county court in the attiude of dealing oppressively and unjustly with those citizens who render her involuntary or indispensable services.

\* \* \*

There is nothing in the twelfth section to restrain the court from making allowances upon exhausted funds, in the face of the marked removal of that restraint in another section.

The irresistible conclusion, upon a review of all the legislation, is, that the act of March 18, 1879, is the result of an effort (perhaps imperfectly accomplished) to return to the true policy indicated by the constitution of 1874: To require all appropriations to be made and taxes to be levied by a full court of justices, and that no money should be paid out of the treasury except on appropriation; and to restrain the county court, or its agents, from making any contracts until money may be appropriated to meet them.

\* \* \*

We search in vain for any prohibition, in the act of 1879, against allowing claims by the county court beyond the appropriations. A large class of the claims *ought* to be allowed, and with regard to those depending on *contracts made* in excess of appropriations, if it be error to allow them, any citizen may appeal and correct the error. There is room for the operation of the whole constitution in all its aspects.

It is, of course, true that Amendment 10 to our State Constitution has prohibited the county court from making any allowance for any purpose in excess of the revenue

from all sources for the fiscal year in which the allowance is made. This limitation, however, was not effective to prevent the county court from allowing claims for the essential governmental services, said to be of an indispensable nature, in excess of the appropriations made. We have not materially deviated from the principles of *Worthen.* Since the adoption of Ark. Stat. Ann. § 17-416 (Repl. 1968), which was Sec. 3 of Act 217 of 1917, this court has held that the county court may not make contracts for items 5, 6 and 7, specified in Ark. Stat. Ann. § 17-409, in excess of the appropriations made for the purposes set out, but that appropriations for the indispensable services of county government set out in the first four items do not constitute a limitation upon the power of the county court or other agents of the county to contract. *State v. E. F. Leathem & Co.,* 170 Ark. 1004, 282 S.W. 367. It has been said that as to the first class of obligations, the county court is substantially without discretion, but that court has discretionary power as to the second class. *Polk County* v. *Mena Star Co.,* supra. However, it is equally clear that whenever an obligation is legally imposed upon a county by legislative enactment within the power of the General Assembly, it must be paid without regard to the existence or exhaustion of a specific appropriation so long as the county general fund is not exhausted. *Adams* v. *Whitaker,* 210 Ark. 298, 195 S.W. 2d 634; *Polk County* v. *Mena Star Co.,* supra; *Crawford County* v. *City of Van Buren,* 201 Ark. 798, 146 S.W. 2d 914; *Burrow* v. *Batchelor,* 193 Ark. 229, 98 S.W. 2d 946. This rule does not apply, however, to any obligation incurred by reason of a contract even though the making of the contract is required by statute. *Jeffery* v. *Trevathan,* 215 Ark. 311, 220 S.W. 2d 412; *Nevada County* v. *News Printing Co.,* 139 Ark. 502, 206 S.W. 899. When the amount of the obligation is fixed by law, the county court is left without any discretion, and it may be compelled to make the payment by mandamus in the circuit court. *Burrow* v. *Batchelor,* supra; *Crawford County* v. *City of Van Buren,* supra. So long as the county general funds are not exhausted, the quorum court can be compelled by mandamus to make appropriations for such obligations. *Jeffery* v. *Trevathan,* supra. See also, *Walsh* v. *Campbell,* 240 Ark. 1034, 405 S.W. 2d 264. It has been said that if the law were otherwise, not only could the county court defy the legislature, but it

could obstruct the necessary and ordinary affairs of the county. *Green* v. *Shell,* 239 Ark. 1161, 397 S.W. 2d 363; *Jeffery* v. *Trevathan,* supra; *Burrow* v. *Batchelor,* supra.

If an appropriation has been made "to defray other expenses of County government as are allowed by the laws of this State" pursuant to item 7 under the sixth sub-division of Ark. Stat. Ann. § 17-409, and it has not been exhausted, any obligation imposed upon the county by statute may be paid from that appropriation, even though no specific appropriation has been made to cover the particular obligation, regardless of whether the govern-ing statute was passed before or after the appropriation was made. *Nevada County* v. *News Printing Co.,* supra; *Jackson County* v. *Pickens,* 208 Ark. 15, 184 S.W. 2d 591; *Jeffery* v. *Trevathan,* supra. See also, *Craig* v. *Grady,* 166 Ark. 344, 266 S.W. 267. In addition, if the legislative mandate specifically requires payment from the county general fund, no appropriation is necessary. *Green* v. *Shell,* supra; *Crawford County* v. *City of Van Buren,* supra. And if the obligation is for necessary expenses for indispensable county government purposes (the first four items of the sixth subdivision of § 17-409), no appropria-tion is necessary as long as there is money in the county general fund to pay it. *Burrow* v. *Batchelor,* supra.

The nature of the appropriation for general county purposes under item 7 of the sixth subdivision of Ark. Stat. Ann. § 17-409 is discussed in *Pressley* v. *Deal,* 192 Ark. 217, 90 S.W. 2d 757, where we said:

In other words, the quorum court has the power to make an appropriation to defray such other county government expenses as are allowed by the laws of this state in addition to those specifically mentioned under the six preceding subdivisions.

We again discussed it in *Adams* v. *Whittaker,* 210 Ark. 298, 195 S.W. 2d 634, saying:

This is in the nature of a "lest we forget" provision and covers any and all other expenses of the county government fixed by the laws of the state, and though

no specific reference is made to elections, these expenses have always been paid and the obligation and power to pay them has never been questioned.

Although we feel that the quorum court's intentions as to the intended use and purposes of the fund could have been more clearly expressed, the "contingent fund" appropriation made to the county court in this case seems to substantially meet these requirements, and in this respect we disagree with the chancellor.

Much of what we have heretofore said has application to the federal revenue sharing funds. It is clear, that once these funds reach the county treasury, they must be appropriated as other funds are, in view of Art. 16, Sec. 12, of the Arkansas Constitution and the federal statutory requirement that the county will provide for the expenditure of the funds in accordance with laws and procedures applicable to its own revenues. 31 U.S.C.A. 1243 (a)(4). The only evidence relating to the intention of the quorum court in making this appropriation is the testimony of Mackey that it will be used for emergency purposes and to cover any category where the county may run out of funds on a particular appropriation. This is not sufficiently definite for us to say that the appropriation was proper, unless it is considered to be an appropriation under item 7 of subdivision 6 of § 17-409 and to be used for any purpose for which county general funds could be used if the purpose is within the purview of "priority expenditures" enumerated in 31 U.S.C.A. § 1222. We do think it proper within the limitations just stated. We agree with the chancellor, however, that no expenditure of funds beyond these limitations is authorized by this appropriation.

Appellants contend that the court erred in granting injunctive relief, saying that the court was indirectly accomplishing what it could not do directly, i.e., enjoin Mackey, individually and as county judge, and Tedford, as county treasurer, and thereby effectively enjoin the county court. We will not dwell upon this matter, because we see no necessity for an injunction. The power of the court to enjoin the treasurer is clear under the authority of *Worthen* v. *Roots,* supra, as previously pointed out in

this case. The power to enjoin the county judge as judge of the county court is at least doubtful. But neither of the officials involved here appears to have any disposition or inclination to evade or avoid the governing law.[1] It seems inappropriate, under these circumstances, to enjoin these officials, in any capacity. It is quite sufficient at this time to treat the action as one for a declaratory judgment. See *Arkansas Association of County Judges* v. *Green*, 232 Ark. 438, 338 S.W. 2d 672.

Accordingly, the injunction is dissolved and that part of the court's decree declaring the appropriations unlawful is reversed and the cause remanded for the entry of a declaratory decree limiting allowances from the contingent fund appropriation of county general revenues to claims based upon obligations of the county for indispensable services of county government (described in Items 1, 2, 3 and 4 of Ark. Stat. Ann. § 17-409) in excess of appropriations made or obligations imposed upon the county by legislative enactment where the amount of the obligation is not left to the discretion of the county court and prohibiting the payment of any claim for a contractual obligation for any other governmental purpose for which a separate, specific appropriation was made by the quorum court, unless such contract was made pursuant to legislative direction or requirement and the specific appropriation made has been exhausted. The decree shall apply the same limitations to the contingent fund appropriation of federal revenue sharing funds and the additional requirement that claims paid out of this appropriation must also be limited to obligations for priority expenditures enumerated in 31 U.S.C.A. § 1222.

GEORGE ROSE SMITH, J., concurs.

BYRD, J., dissents.

---

[1]We do not overlook the two items relied upon by appellee to show previous use of the "contingent fund." They are payments to charities and payment for moving the sewer line for the courthouse, necessitated by construction of a convention center across the street. The latter is a non-recurring expenditure. Although the propriety of these items may be subject to serious doubt, we do not believe that these matters contravene our statement regarding the intentions of the officials.

CONLEY BYRD, Justice, dissenting. I disagree with that portion of the majority opinion that holds the "Contingent Fund" appropriation to be legal. I also disagree with the majority's conclusion that the record shows that only expenses or obligations imposed by law were being allowed on the "Contingent Fund."

This court has recognized in *Nevada County* v. *News Printing Company,* 139 Ark. 502, 206 S.W. 899 (1918), that Art. 16, § 12 of our Constitution is applicable to the several counties. That provision of the Constitution provides:

"No money shall be paid out of the treasury until the same shall have been appropriated by law, and then only in accordance with said Appropriation."

In *Worthen* v. *Roots,* 34 Ark. 356 (1879), while construing Ark. Stat. Ann. § 17-409, set out at page 10 of the majority opinion, we held:

". . . [I]t will be seen that the first four [provisions] are of an indispensable nature, essential to the support of the government. They are for services that *must* be performed, or the business of the counties must stop. The last three are not supposed to be imposed by necessity, but are matters of contract. It is well that appropriations be made for all purposes, but of great consequence that in the matter of *contracts* the expenses of the counties should be limited to the amounts appropriated. This is impossible in cases of positive service required by law and expenses incident to them; and in accordance with this view the legislature did not reimpose upon the county court any disability as to allowances . . . ."

In *Fones Hardware Co.* v. *Erb,* 54 Ark. 645, 17 S.W. 7, 13 L.R.A. 353 (1891), we held that a contract for building a county bridge made without a previous appropriation therefor by the levying court was void.

In *Nevada County* v. *News Printing Co.,* 139 Ark. 502, 206 S.W. 899 (1918), we held that a valid contract, entered

into by the county clerk in accordance with an act of the legislature could not be paid by the county court without an appropriation.

In *Pressley* v. *Deal,* 192 Ark. 217, 90 S.W. 2d 757 (1936), we had before us a quorum court appropriation allowing the county judge $300 for unusual expenses. We there held that those expenses could not be paid out of the appropriations under the seventh subdivision of Ark. Stat. Ann. § 17-409, *supra,* which provides: " . . . to defray such other expenses as are allowed by laws of this State." The theory was that no law of this State authorized the allowance of the expenses.

In *Martin* v. *Bratton,* 223 Ark. 159, 264 S.W. 2d 635 (1954), there was before us a quorum court appropriation " . . . from the County General Fund to allow the County Judge to use it as he sees fit and deems necessary." In holding this appropriation invalid, we said:

"Counsel for appellees have cited us to no Statute or case and our search has likewise failed to discover any —that allows the Quorum Court to turn over $20,000, or any other amount, to the County Judge 'to use as he sees fit and deems necessary.' That such an appropriation is not within the purview or spirit of our Statutes is shown by a study of § 17-412 and § 17-414, Ark. Stats. These provisions clearly envision (1) that all appropriations by the Quorum Court must be for a specific purpose allowed by law; (2) that after the appropriation is made, then any allowance of a claim against that appropriation must be by the *County Court* and not by the *County Judge;* and (3) that the County Court order of allowance must specify the appropriation against which the claim is allowed before the money can be drawn out of the Treasury. Although the County Judge presides over the County Court, it is the *County Court* that makes the order of allowance, and not the *County Judge.* Art. 7, § 28, of the Constitution so provides. See also *Lyons* v. *Pike County,* 192 Ark. 531, 93 S.W. 2d 130. In the case at bar, the Quorum Court by its appropriation of the $20,000 'to allow the County Judge to use it as he

sees fit and deems necessary,' attempted to entirely by-pass the functions of the County Court, because the appropriation was to be used by the County Judge, rather than by the County Court." *Id.* 223 Ark., at 161-162.

Judge Mackey testified that he had made payments from the "Contingent Fund" in past years for charities and for the moving of a sewer line from the courthouse for the construction of the convention center. On direct examination the record at page 88 shows the following testimony by Judge Mackey:

"Q. Do you have a set of—the budget makes no guide line that I can see as to how these contingent funds are to be spent. Is that your understanding?

A. It is set up for emergency purposes, sir. If we run out of funds in one of the categories set out—we don't know how much we are going to spend. Fact of the matter, not a dime of the Federal Revenue Sharing money has been spent yet. We have not paid out a dime against this. The contingent fund is simply if we run out of funds in one of the categories which it is appropriated, we can reach in the contingent fund and supplement that.

Q. Who will make that decision?

A. I will."

The Chancellor who observed the witnesses as they testified in a written opinion made the following observation:

"The 'Contingency Fund' of the General Revenues in this case does not meet the tests for lawful appropriations laid down by the Supreme Court of Arkansas. This fund is not authorized by any statute; it is not being limited to the expenses of the administration of the County Court; it is not for a specific purpose in accordance with the law; and it is being used for all sorts of county expenses."

It would appear that his finding on the fact issue is entitled to some weight.

Thus, if we consider the "Contingency Fund" without the evidence as to the allowances made therefrom, it appears to me that it is nothing more nor less than an attempt to entirely by-pass the functions of the county quorum court contrary to Article 16, § 12 of our Constitution. If we consider the testimony then it certainly appears evident that the County Judge is using the "Contingency Fund" to defray deficiencies under any appropriation authorized by Ark. Stat. Ann. § 17-409 including those that are discretionary. The latter results in the payment of claims without an appropriation by the county quorum court or in excess thereof, contrary to the many decisions of this court that have construed the same constitutional provisions and laws here involved.

For the reasons stated, I respectfully dissent.