The Honorable Lloyd C. McCuiston, Jr. State Representative 1501 N. Golf Link Cove West Memphis, AR 72301-3867
Dear Representative McCuiston:
This is in response to your request for an opinion on the following question:
 May a city of the first class, through its community development agency, borrow against its future Housing and Urban Development (HUD) Entitlement Funds in order to complete a drainage and roadway project?
You note that Section 108 of the Housing and Community Development Act of 1977, as amended (42 U.S.C.S § 5308 (1989 and Cum. Supp. June, 1991)), allows municipalities to apply for a HUD loan against future entitlements. You state that the City of West Memphis has been told by HUD officials that the City of Little Rock has carried out such a project under this program.
Section 5308 of Title 42 of the U.S. Code, as amended, states in pertinent part under subsection (a) that:
 [t]he Secretary [of Housing and Urban Development] is authorized, upon such terms and conditions as the Secretary may prescribe, to guarantee and make commitments to guarantee . . . the notes or other obligations issued by eligible public entities, or by public agencies designated by such units of general local government, for the purposes of financing (1) acquisition of real property owned by the eligible public entity . . .; (2) housing rehabilitation; (3) economic development activities permitted under paragraphs (14), (15), and (17) of section 105(a) [42 U.S.C.S. § 5305(a)]; or (4) construction of housing by nonprofit organizations for home ownership under section 17(d) of the United States Housing Act of 1937 or Title VI of the Housing and Community Development Act of 1987 [42 U.S.C.S. § 1417a or 12 U.S.C.S. § 1715l note].
Subsection (d) of § 5308 states:
 To assure the repayment of notes or other obligations and charges incurred under this section and as a condition for receiving such guarantees, the Secretary shall require the issuer to:
 (A) enter into a contract, in a form acceptable to the Secretary, for repayment of notes or other obligations guaranteed hereunder;
 (B) pledge any grant for which the issuer may become eligible under this title; and
 (C) furnish, at the discretion of the Secretary, such other security as may be deemed appropriate by the Secretary in making such guarantees, including increments in local tax receipts generated by the activities assisted under this title or dispositions proceeds from the sale of land or rehabilitated property.
 (2) To assist in assuring the repayment of notes or other obligations and charges incurred under this section, a State shall pledge any grant for which the State may become eligible under this title as security for notes or other obligations and charges issued under this section of general local government in a nonentitlement area in the State.
It thus appears that the federal act makes provision for pledging future entitlements as security for the repayment of notes or other obligations guaranteed by HUD. The local entity (in this instance, a "community development agency") must, of course, be an eligible public entity or designated public agency for purposes of the act. And the project in question must fall within the stated purposes under § 5308 in order to qualify for the guarantee program. I lack sufficient information to make any determinations in this regard; and, in any event, these matters must be addressed to HUD as the administrative authority.
Assuming, however, that the project meets the various threshold requirements under the federal act, a conclusive answer to your question would require review of the particular terms and conditions of the note and repayment contract in light of Arkansas law. Particular consideration must, in my opinion, be given to the Arkansas constitutional prohibition against the issuance of any interest bearing evidences of indebtedness. Ark. Const. art. 16, § 1. This prohibition extends to the state, as well as any "city, county, town or other municipality in this State." Id.[1] While other factors or considerations may emerge following a review of actual agreements, I believe that this interest prohibition must be a primary concern. The federal act does state that ". . . grants allocated to any issuer pursuant to this title (including program income derived therefrom) are authorized for use in the payment of principal and interest due . . . on the notes or other obligations guaranteed pursuant to this section." 42 U.S.C.S. § 5308(c) (1989). The Arkansas interest prohibition would perhaps not be implicated in the event federal grant monies are used to secure repayment under the guarantee program. See, e.g., Turner v. Woodruff,286 Ark. 66, 698 S.W.2d 527 (1985) (holding that Student Loan Authority bonds to be repaid from income derived from loan notes and investments, with interest payments coming from the federal government, do not constitute an indebtedness or obligation of the State of Arkansas). See also Mackey v. McDonald,255 Ark. 978, 504 S.W.2d 726 (1974) (holding that an illegal exaction suit may be maintained to prevent misapplication of funds when the taxpayer may be required to replenish the funds upon misapplication, and distinguishing Gipson v. Ingram,215 Ark. 812, 223 S.W.2d 595 (1949), where funds in question were not derived from taxes and never reached the public treasury.255 Ark. at 982-983.)
A review of these cases suggests that a different outcome may have been reached had state or local tax revenues been the source of any payments or reimbursements, or if the non-tax revenues had not been maintained separately. This area of concern should, in my opinion, be fully explored by the city's legal counsel before any agreements are entered. While I am unable to provide a conclusive response to your question, due to the necessary factual determinations, the foregoing will hopefully be of assistance in developing specific proposals.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] Article 16, Section 1 states: "Neither the state nor any city, county, town or other municipality in this State shall ever lend its credit for any purpose whatever; nor shall any county, city or town or municipality ever issue any interest bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the Constitution of 1874, and the State shall never issue any interest-bearing treasury warrants or scrip."