The Honorable Jim Milum State Representative 607 Skyline Drive Harrison, AR 72601-2309
Dear Representative Milum:
I am writing in response to your request for my opinion on the following question, which you report a constituent member of the Boone County Quorum Court has posed:
 A case note to A.C.A. § 14-20-104 states that "There is no provision in law allowing a quorum court to turn over to a county judge a sum of money `to use as he sees fit and deems necessary,' and such an appropriation is invalid." Would a general fund department [sic] identified only as "County Roads," containing only four (4) line items and funded entirely by anticipated sales tax revenues, be viewed as a "sum of money" as described in the case note? Could or should it include a schedule of work to substantiate funds budgeted? Most of the funds are allocated to only a single item: "County Matching Advance — Road Construction and Maintenance."
RESPONSE
I believe the appropriations described in your request are materially distinguishable from an appropriation to a county judge of money "to use as he sees fit and deems necessary." I am unable and unauthorized to opine on the factual question of whether the appropriation could or should include a schedule of anticipated work. As general propositions of law, the quorum court's appropriation should be as specific as possible as to each county purpose and actual allowances made should be scrupulously documented.
Article 16, § 12 of the Arkansas Constitution provides:
 No money shall be paid out of the treasury until the same shall have been appropriated by law, and then only in accordance with said appropriation.
This section of the constitution applies to the counties as well as the states. Mackey v. McDonald, 255 Ark. 978, 986, 501 S.W.2d 726 (1974);Nevada County v. News Printing Company, 139 Ark. 502, 206 S.W. 899
(1918).
Article 12, § 4 of the constitution further provides that no county court may "make any allowance for any purpose whatsoever in excess of the revenues from all sources for the fiscal year in which said . . . allowance is made. . . ."
Article 7, § 30 of the constitution provides in pertinent part:
 The justices of the peace of each county shall sit with and assist the county judge in levying the county taxes, and in making appropriations for the expenses of the county in the manner to be prescribed by law. . . .1
Section 14-20-104 of the Arkansas Code, captioned "Appropriations and Allowances," provides as follows:
 (a) Every order of allowance made by the county court shall set forth the appropriation out of which it is to be paid.
 (b) It shall be the duty of the clerk annually, and immediately after the adjournment of the county quorum court for the levy of taxes and the making of the appropriations, to open a book to be kept for that purpose, in which he shall debit each appropriation by the amount appropriated therefor, and as the allowances are made by the county court, he shall credit each appropriation by the allowance ordered to be paid out of such appropriation.
In Martin v. Bratton, 223 Ark. 159, 161-62, 264 S.W.2d 635 (1954) — the source of the note referenced in your request — the Supreme Court interpreted an earlier version of this statute as follows:
 These provisions clearly envision (1) that all appropriations by the Quorum Court must be for a specific purpose allowed by law; (2) that after the appropriation is made, then any allowance of a claim against that appropriation must be by the County Court and not by the County Judge; and (3) that the County Court order of allowance must specify the appropriation against which the claim is allowed before the money can be drawn out of the Treasury. Although the County Judge presides over the County Court, it is the County Court that makes the order of allowance, and not the County Judge. Art. 7, 28, of the Constitution so provides.
Based on these authorities, the Court in Martin struck as impermissible an appropriation of $20,000 "to allow the County Judge to use it as he sees fit and deems necessary." Id. at 162.
I am frankly confused by the reference to the "county court" as the entity authorizing allowances in A.C.A. § 14-20-104(a).2 Admittedly, as reflected in the passage just recited from Martin, the county court did make allowances before the 1974 adoption of Ark. Const. amend. 55, which reorganized county government. However, in the wake of Amendment 55, the county judge was afforded various new powers, including the power "[t]o authorize and approve disbursement of appropriated county funds," A.C.A. § 14-14-1101(a)(2); "[t]o operate the system of county roads," A.C.A. § 14-14-1101(a)(3); and to administer "the conduct of a plan of public roadways and bridges throughout the unincorporated areas of the county," A.C.A. § 14-14-1102(a)(1)(A)(i).3 I suspect that the term "county court" in A.C.A. § 14-20-104(a) may be an inadvertent carryover from the pre-Amendment 55 predecessor statutes and should read" county judge." However, resolving this issue is in no way crucial to my rendering an opinion, since the individual making the allowances will be the same regardless of whether he is designated the "county judge" or the "county court."
As I understand your request, the Boone County Quorum Court has appropriated an anticipated income stream from sales tax revenues for use on "County Roads." This general category has four designated subcategories, only one of which you have identified: "County Matching Advance — Road Construction and Maintenance." Your constituent reports that "[m]ost of the funds are allocated" to this subcategory.
Given the limited information I have been supplied, I am unable to opine on the propriety of what has occurred in Boone County. However, I can offer my opinion regarding the procedures I feel should be observed. Your constituent appears to be concerned that the appropriation of anticipated revenues for four designated purposes relating to "County Roads," including "Road Construction and Maintenance," is too general to withstand challenge. The pertinent statute to test the quorum court's conduct reads as follows:
 The county quorum court shall specify the amount of appropriations for each purpose in dollars and cents, and except as authorized in subsection (c), the total amount of appropriations for all county or district purposes for any one (1) year shall not exceed ninety percent (90%) of the anticipated revenues for that year, except for federal or state grants overseen by counties which the court may appropriate up to one hundred percent (100%) of the anticipated revenues for that year.
A.C.A. § 14-20-103(a).
I see nothing impermissible as a matter of law in the quorum court's appropriating money into a fund designated for" County Roads," particularly in light of the fact that the appropriation has apparently been subdivided by the quorum court into four subcategories, thus giving the county judge guidance as to how much is available for the various purposes. However, I am unable to say whether the appropriations reasonably can be further broken down by purpose in accordance with the statute just cited or, for that matter, whether it is the habit and practice of other quorum courts to do so. These questions raise issues of fact I am unable and unauthorized to address. I further suspect but cannot opine that there is no impropriety in earmarking the lion's share of this appropriation for maintenance and repair, which I assume normally constitutes the major annual expense related to roads. This again raises an issue of fact I cannot address. However, I can and will opine that an appropriation limited to the area of county roads seems to me categorically different from an unqualified appropriation to the county judge "to use it as he sees fit and deems necessary." To restrict the use of money to work on county roads is far less conducive to waste and abuse than simply offering money with no strings attached.
In determining whether the appropriations are insufficiently specific, it may be significant that the county judge, not the quorum court, is charged with "the maintenance and construction of public roadways and bridges and roadway drainage designated as eligible for expenditure of county funds." A.C.A. § 14-14-1102(b)(1)(A)(i). The county judge's experience in this area doubtless affords him a far greater degree of expertise than the quorum court regarding how funds appropriated for a general purpose should be allocated. Whether he can realistically use this knowledge to prepare a detailed estimate of anticipated costs to be used by the quorum court in authorizing more detailed appropriations is a question that can only be addressed by a finder of fact. Assuming amounts annually appropriated in rather general terms closely track amounts actually expended, it may be a matter of governmental efficiency to leave the county judge some leeway in allocating for more particular needs.
Nothing in the foregoing is intended to suggest that the allowances made and disbursements approved by the county judge should not be scrupulously documented. Subsection 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(b)(2) in fact requires precisely such documentation. Moreover, should it develop that the quorum court's appropriations regularly vary significantly from actual needs, that fact in itself might serve as a basis for a challenge. However, based on the limited information before me, I cannot opine that the quorum court has failed in its duties.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
1 Following the adoption of Amendment 55 to the constitution, the legislature vested the power to levy taxes and to appropriate revenues exclusively in the quorum court. A.C.A. § 14-14-904(b)(1).
2 I should note that the "county court" is distinguishable from the "quorum court." This office explained this distinction as follows in Op. Att'y Gen. 97-181:
 The "county court" strictly speaking, is neither the "county judge" nor the quorum court. It is, however, presided over by one judge, the "county judge," who, when so presiding, acts in a judicial, rather than an executive capacity. See Arkansas Constitution, art. 7, § 28 and A.C.A. § 14-14-1105(a). It has been stated that: "[a]lthough the Arkansas Supreme Court has meticulously separated the judicial and executive functions of the county judge on a case-by-case basis, there is still great confusion in Arkansas with respect to what the county court is." Comment, County Government Reorganization in Arkansas,
28 Ark. L. Rev. 226, 235 (1974). It was stated, prior to the adoption of Amendment 55, that:" In each county there is a court, presided over by a county judge, known as the county court. . . . The county court is the principal instrument of county government and performs a mixture of executive and legislative as well as judicial tasks." Greenebaum, Arkansas' Judiciary: Its History and Structure, 18 Ark. L. Rev. 152 (1964). Since the adoption of Amendment 55, the county court exercises fewer powers (former powers now being exercised either by the quorum court, or by the county judge in an executive capacity), but it clearly still exists, and consists of the county judge, wearing a judicial hat. See again, A.C.A. § 14-14-1105.
3 Prior to the adoption of Amendment 55, these powers resided in the county court pursuant to Ark. Const. art. 7, § 28, which provides in pertinent part:
 The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges . . . the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties. The county court shall be held by one judge, except in cases otherwise herein provided.